MEYER *et al.* v. AMERICAN FOLDING CHAIR COMPANY *et al.*, *Appellants.*

Division Two, October 11, 1895.

1. **Corporation:** INSOLVENCY: PREFERENCE. A corporation which has become insolvent but still retains dominion over and controls its property does not hold it as a trust fund for the benefit of all its creditors, but may, in good faith, transfer it so as to give preference among them.

2. **Appellate Practice:** ESTOPPEL. A cause will be determined in the appellate court on the theory on which it has been tried in the circuit court.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED.

*Thomas E. Ralston* and *Alonzo C. Church* for appellants.

(1) The American Folding Chair Company was, on the sixteenth day of October, 1890, a "going concern," employing over fifty hands, actively engaged in the prosecution of its legitimate manufacturing business, and in full and undisturbed control of its property, unaffected by any liens or judicial proceedings. *First.* A manufacturing corporation, in Missouri, "is a going concern, in contemplation of law, so long as the property of the company remains in its possession, unaf-

fected by liens or process of law." *Alberger v. Bank*, 123 Mo. 313. *Second.* Though in failing circumstances, or insolvent, even, it had a perfect legal and equitable right to make, in good faith, a valid preference in favor of the American Exchange Bank, for present debts and future advances, by the execution of the deed of trust of October 16, 1890, on all its tangible property and effects. *Alberger v. Bank, supra; Foster v. Planing Mill Co.*, 92 Mo. 79; *St. Louis v. Alexander*, 23 Mo. 483; *Larrabee v. Bank*, 114 Mo. 592; *La Grange Butter Tub Co. v. Bank*, 26 S. W. Rep. 710; *Kitchen v. Railroad*, 69 Mo. 254. *Third.* The above doctrine of the supreme court of Missouri is in harmony with the general, though not quite uniform, current of authorities in the United States on this question. *Gould v. Railroad*, 52 Fed. Rep. 683; *Fogg v. Blair*, 133 U. S. 541; *Hollins v. Iron Co.*, 150 U. S. 385; *Brown v. Furniture Co.*, 58 Fed. Rep. 286; *Hospes v. Car Co.*, 48 Minn. 174. (2) The fact that the deed of trust covered all the tangible property of the chair company (not enough, as shown by the evidence, to secure the bank), and authorized the trustee to take possession, so soon as the bank should deem itself insecure, did not make the deed of trust actually or constructively fraudulent, or constitute it an assignment for the equal benefit of all the creditors of the chair company. *Alberger v. Bank*, 123 Mo. 313; *Jaffray v. Matthews*, 120 Mo. 317; *Crow v. Beardsly*, 68 Mo. 435; *Hargadine v. Henderson*, 97 Mo. 375; *Bank v. Bank*, 136 U. S. 190. (3) The provision in the deed authorizing the chair company to remain in possession and make sales, with the knowledge and consent of defendant's agent, who was to receive the proceeds and apply the same on the notes and advances secured by the deed, did not in any way invalidate the deed as a good security. *Manhattan Brass Co. v. Co.*,

37 Mo. App. 145; *Metzner v. Graham*, 57 Mo. 404; *Hubbell v. Allen*, 90 Mo. 574.

*Paul F. Coste* for respondents.

(1) Where there is knowledge of and participation in the fraud and deception on the part of the grantee or beneficiary in the conveyance, the conveyance will be held fraudulent and void, as to creditors, although the effect of it may be to secure a valid debt of the grantee. *Henderson v. Henderson*, 55 Mo. 534; *Ames v. Gilmore*, 59 Mo. 537; *Dougherty v. Cooper*, 77 Mo. 528; *Shelly v. Booth*, 73 Mo. 74; *Frederick v. Allgaier*, 88 Mo. 598. (2) Directors of an insolvent corporation which has ceased to be "a going concern," can not in any way use their powers in their position of trust for the purpose of obtaining an advantage to themselves. 2 Morawetz on Corporations, secs. 787; Taylor on Corporations, sec. 759; *Drury v. Cross*, 7 Wall. 299; *Jackson v. Ludleling*, 21 Wall. 616; *Marr v. Bank*, 4 Coldw. 471; *Koehler v. Iron Co.*, 2 Black, 715; *Roan v. Winn*, 93 Mo. 512. (3) The assets of an insolvent corporation, which has ceased to do business, and in the general commercial sense, is as a matter of fact, defunct and no longer "a going concern," are a fund in which all creditors of the corporation have an equal right to share, and that hence a preference therefrom of one or more over the body of the creditors is inequitable and unlawful and beyond the powers of the officers and directors at such a time. Wait on Insolvent Corp., secs. 162, 654, 142, 145, 146; Morawetz on Corp., sec. 183, and cases in notes; Taylor on Corp., secs. 759, 669, and cases cited; *Roan v. Winn*, 93 Mo. 503; *Foster v. Mullanphy P. M. Co.*, 92 Mo. 79; *Eppright v. Nickerson*, 78 Mo. 490; *Wood v. Dummer*, 3 Mason, 308; *Rouse v. Bank*, 46 Ohio St. 493; *Marr*

*v. Bank*, 4 Coldw. 471; *Richards v. Ins. Co.*, 43 N. H. 263; *Clyne v. Canal Co.*, 24 How. 262; *Haywood v. Lumber Co.*, 64 Wis. 639.

BURGESS, J.—The American Folding Chair Company was a corporation, engaged in the city of St. Louis in the manufacture and sale of toys, settees and chairs, under letters patent of which it was the owner. Its authorized capital stock was $50,000; $35,000 of which had been paid in.

In July and August, 1890, the company determined to add a wholesale and retail lumber business to its manufactory business. The company did its banking business principally with the defendant, the American Exchange Bank, depositing its moneys and having its notes discounted there. From about July to October 16, 1890, the company was indebted to the bank in about the sum of $9,000. It was not able to pay its notes in full becoming due in September and October, and paid part of them as they became due, and secured a renewal of the same either on time notes, or notes payable on demand. Joseph G. Miller who was a stockholder, director and president of defendant company, was accomodation indorser on all of said notes.

In the early part of said month of October, 1890, it became apparent that the chair company would need from $5,000 to $10,000 increase in its line of discounts. The company then applied to the defendant bank for the loan of the amount of money needed, offering said Miller as its indorser, but the bank declined to make the loan. It was finally agreed that the bank would take a deed of trust upon all of the property of the chair company, furnish them additional money not to exceed $10,000, and extend the payment of the five notes, which the bank already had for the period of six months.

In accordance with said agreement between the chair company and the bank, the attorney of the bank drew up a deed of trust covering all the tangible property of the chair company, not including its accounts, amounting to $1,500. At the time of the execution of the deed of trust the chair company's account in the bank was overdrawn about $230.

The deed of trust was acknowledged and delivered on the sixteenth day of October, 1890, but by agreement between the bank and the chair company was withheld from record until the twenty-ninth day of October, 1890. On the same day of its execution, however, the bank placed an agent to see that the chair company made no sales of the lumber, materials and manufactured articles mentioned in the deed of trust, without his knowledge, to receive and control the proceeds thereof and turn them over to the bank once a week in payment of the debts and advances mentioned in said deed of trust. The bank, after the execution of the deed of trust, at once commenced to advance money to the chair company, $1,000 on its notes and the balance by allowing the chair company to overdraw its account, and continued to advance money until about December 2, 1890, when it had advanced in all about $5,000.

The chair company collected $1,500 from its open accounts. One thousand dollars of this was paid over to the bank before the first of December, 1890, and about $500 after the first of December. The chair company had on deposit in the bank to its credit at the time the receiver was appointed $330, which came from the proceeds of the sales of stock covered by the deed of trust. The bank received the $5,000 which it had advanced to the chair company and applied the same to the payment of said advance on or before the

twenty-ninth day of December, 1890, and also received $4,500 more from the sale of stock and lumber, covered by the deed of trust, which it applied to the payment of the three notes mentioned in the petition to wit:   Note dated July 21, 1890, $2,000; note dated October 6, 1890, $1,500; note dated September 15, 1890, $1,000.   This left still due and unpaid to defendant bank the following notes:   Note dated September 20, 1890, $2,500; note dated October 7, 1890, $2,000.

On the eighth day of December, 1890, this suit was begun by plaintiffs, creditors of the American Folding Chair Company, against said company, the American Exchange Bank and others, to have said deed of trust set aside on the ground that it was executed upon property of a corporation which was at the time insolvent and which was held by it in trust for all of the creditors and to compel it to account for all such property.   The demands sued on had not been reduced to judgments at the time of the commencement of the suit.

On the third day of March, 1891, one E. D. Meier was duly appointed receiver to take charge of all of the corporate property, collect and receipt for all debts and demands due to it, etc.

The court found the issues joined in favor of the plaintiffs and against the defendants; that the plaintiffs and intervenors were creditors of the chair company; that the American Exchange Bank was a creditor of the chair company for the sum of $10,114.06; and that the aggregate of all such claims entitled to participate in the distribution was $20,862.50; that the bank had advanced to the chair company after October 16, 1890, divers sums of money, aggregating $5,000, and that said advances were secured by said deed of trust, and had been received back by said defendant, the Ameri-

can Exchange Bank; and decreed that said bank is and was entitled to retain the said sum of $5,000 out of the moneys received by it from the chair company and by the bank already applied toward the payment of said advances.

The court further found that the bank had received out of the assets belonging to the chair company on October 16, 1890, which assets the court declared were then and there a trust fund for all the creditors of said last named company equally, the further sum of $4,500, "which sum the American Exchange Bank did apply, contrary to law, to the payment, of three notes of the American Folding Chair Company, held by said bank." The court decreed that the plaintiffs recover of the bank the said sum of $4,500, amounting with interest to the sum of $4,883.25, together with costs of the action, exclusive of the costs of the receiver, and that said bank pay the same to said receiver in ten days.

The court further found that there was in the possession of the receiver the sum of $2,224.91, realized by him from sales of the remaining assets belonging to the chair company on October 16, 1890, and which assets the court found were then and there a trust fund for creditors equally.

The court also decreed that the said sum of $2,-224.91, together with the sum of $4,883.25, to be paid by the American Exchange Bank, should be distributed ratably among the creditors of the American Folding Chair Company mentioned, in the decree, by the receiver; that the dividend to be paid by the receiver to the bank should be first applied toward the payment of the indebtedness evidenced by the three notes surrendered by it to the chair company and in the decree described, until said notes should be fully satisfied before any application of payment should.be made from

said dividend to its other notes described in the answer.

From the finding and judgment of the court the American Exchange Bank appealed.

The action is based solely on the theory that the property and assets of the defendant American Folding Chair Company, were held in trust by it for the benefit of all its creditors, and that after it become insolvent it could not legally prefer one of its creditors over another; but the rule now seems to be firmly established in this state, that as long as a corporation, although insolvent, retains dominion over and control of its property it may, in the absence of statutory inhibition, dispose of it as an individual, and prefer one or more creditors to another, provided, it does so in good faith to secure, or in payment of, a *bona fide* debt. *Foster v. Planing Mill Co.*, 92 Mo. 79; *Larrabee v. Bank*, 114 Mo. 592; *Lagrange, etc., Co. v. Bank*, 122 Mo. 154; *Alberger v. Bank*, 123 Mo. 313; *Waggoner-Gates Milling Co. v. Commission Co.*, 128 Mo. 473.

It is contended, however, that, even though this be the law, the judgment should be sustained upon the ground that the deed of trust from the chair company for the use and benefit of the defendant bank was fraudulent as to all other creditors of the chair company. This position seems to us to be untenable. The suit was not prosecuted or tried upon that theory, and must be disposed of by this court according to the case made by the pleadings and the issues raised thereby. The petition contains no allegation of fraud on the part of the bank in obtaining or accepting the benefits flowing from the deed of trust, and is wholly insufficient to sustain the judgment of the court below upon that theory of the case.

From these considerations the judgment must be reversed. It is so ordered. GANTT and SHERWOOD, JJ., concur.