# HERF & FRERICHS CHEMICAL COMPANY, Respondent, v. LACKAWANNA LINE, Appellant.

### St. Louis Court of Appeals, March 17, 1903.

1. **Carrier: CONTRACT OF SHIPMENT: DUTY TO NOTIFY CONSIGNEE.** Where on a prior appeal the Court of Appeals has held that an objection to a reply as a departure from a petition was waived by failure to raise the objection by special demurrer, on motion to strike out before going to trial, such holding is the law of the case.

2. ——: ——: **NOTICE TO CONSIGNEE NOT REQUIRED.** Where a contract of shipment is made in Missouri between a resident corporation of that State and a carrier having an office and doing business there, such contract is governed by the laws of that State, and the carrier is not required to notify the consignee of the arrival of the shipment after it arrives at the destination on time.

3. ——: ——: ——: **USAGE OF BUSINESS CONTROLS UNLESS STIPULATED AGAINST.** Where the uniformly observed usage of the place to which goods are shipped requires the carrier to notify the consignee of the arrival of the shipment, such usage will be binding on the carrier unless its observance is dispensed with by an express stipulation to that effect in the contractor's shipment.

4. ——: ——: **STIPULATION NOT SUFFICIENT TO DISPENSE WITH NOTICE.** A local usage of a place to which goods are shipped, requiring the carrier to notify the consignee of the arrival of the shipment, is not dispensed with by a stipulation in the contract of shipment that the goods are to be called for on the day of their arrival.

5. ——: ——: ——: **NOTICE FOR THE JURY, WHEN.** Where a carrier claims that it had notified a consignee by mail of the arrival of a shipment, but the persons having charge of the consignee's mail claimed that such notice was never received and could not be found in the files in which they were always kept, it was a question for the jury whether the notice was actually received by the consignee.

6. ——: ——: **NOTICE, EVIDENCE OF CONFLICTING: QUESTION FOR JURY.** Where there was conflicting evidence as to when a carrier had given personal notice to a consignee of the

arrival of a shipment, it was a question for the jury, if the motion was given in time, and their finding thereon is conclusive.

7. ———: ———: NEGLIGENCE OF CARRIER: ABANDONMENT BY SHIPPER. To authorize a shipper to abandon goods and look to the carrier for the value or compensation for loss, on account of deterioration, the shipper must show not only that it was on account of the carrier's negligence that the goods were not delivered in due time, but also that the carrier negligently kept the goods in an unsafe place until they had materially deteriorated.

8. ———: ———: FAILURE TO GIVE NOTICE TO CONSIGNEE: BREACH OF CONTRACT OF SHIPMENT. Where a contract was made for a shipment of goods to a place where the established usage was for the carrier to notify the consignee of the arrival of the goods, a failure to give such notice would constitute a breach of contract.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

### STATEMENT.

Plaintiff is a corporation engaged in the manufacture of chemicals in the city of St. Louis. The defendant is an incorporated association doing business as a common carrier. The substance of the petition is that on September 24, 1900, plaintiff delivered to defendant at St. Louis, Missouri, and defendant received from plaintiff for transportation to New York City, to be delivered to Schoellkoph, Hartford & Maclagan (a corporation) a case of chemicals containing subnitrate of bismuth of the value of $381.60, which defendant agreed to transport and deliver, in consideration of certain freight charges paid, or to be paid; that in violation of the contract defendant failed and refused to carry said goods to New York City and failed and refused to deliver them to Schoellkoph, Hartford & Maclagan, by reason whereof plaintiff was damaged in the sum of $381.60, for which with interest he prays judgment.

The answer was a general denial and a plea of the

following special defenses: That it entered into a special written and printed contract (set forth and quoted) with plaintiff on September 24, 1890, for the transportation of one case of chemicals from East St. Louis to New York City; "that it transported the property described in said special contract in due time and in good order to the city of New York, and that said property remained uncalled for in its possession from the date of its arrival in New York, to-wit, on or about the 4th or 6th days of October, 1890, until the 24th day of December, 1890; at which time defendant, as it lawfully might, sent said property to a storage warehouse, to be stored there at the owner's risk and expense, as provided in said special contract, hereinabove set forth, and that on or about the 22nd day of October, 1891, said goods were sold for the freight charges thereon in said storage warehouse in due conformity to law.

"Wherefore, defendant says that plaintiff ought not to have or maintain this action, and having fully answered, prays to be discharged with its costs."

The reply admitted the contract as alleged in the answer and then proceeded as follows:

"And further replying, plaintiff states that the property referred to in said special contract is the same property sued for in this case; that after the arrival of said shipment in New York and while same was in defendant's possession, plaintiff and its consignees demanded delivery of same from defendants, tendering to it at the time, all freight and other charges against said shipment, but defendant in violation of its duty, failed and refused to deliver said property, as demanded.

"And plaintiff further states that at the time of the making of said shipment and special contract, and at the time of arrival of said shipment in New York, there existed in New York an established custom of terminal carriers delivering shipments in New York City, and among them of the defendant Lackawanna line and

of the Delaware, Lackawanna and W. R. R. Co., a mem-
of the defendant line and the last carrier of said ship-
ment, to the effect that upon the arrival whether on
time or not, of shipments for delivery in New York City,
they customarily notified consignees of the said arrival
and of the location of goods shipped, in manner as fol-
lows: Where the address or location of the consignees
in New York City was below City Hall Park, a first
notice was customarily sent by delivering to consignees
on, to-wit, the day or the day after arrival, a written
and printed notice of the arrival and location, by mes-
senger, who took receipts for first notices so delivered,
and thereafter, in the event of said shipment not being
called for, two further notices were sent by postal
cards, mailed to consignees, at intervals of, to-wit, three
weeks to a month after arrival. That plaintiff's con-
signees knew and relied upon said custom of defendant
and its terminal member of notifying consignees of the
arrival of shipments as aforesaid. That the address
of consignees in New York City was located below City
Hall Park, and was known to defendant and its said
terminal member.

"That notwithstanding its said custom defendant,
further violating its duty to plaintiff, carelessly failed
and neglected upon and after the arrival of said ship-
ment to notify plaintiff's consignees of its arrival and
location as required by said custom.

"And further replying plaintiff states that on, to-
wit, November 13, 1890, upon the failure of consignees
to receive any notice of arrival, plaintiff requested de-
fendant to trace and locate said shipment so that
same might be delivered to plaintiff or its con-
signees, and thereafter plaintiff repeatedly renewed
said request to trace, from time to time, but that de-
fendant in further violation of its duty so carelessly
and negligently cared for, handled, placed or stored
said shipment and so failed to use reasonable and ordi-
nary care and diligence in tracing and finding same af-

ter its arrival in New York, that it failed to find, locate and produce said shipment ready for delivery for an unreasonable time, to-wit, eight months after the arrival of same at destination, and after plaintiff had requested the tracing, location and production thereof, that at the time of plaintiff's said request to trace and thereafter said property was and remained in defendant's possession, and might by the exercise of reasonable care, have been readily located and produced for delivery.

"That before learning of said arrival and, to-wit, in February, 1891, plaintiff, because of defendant's delay in locating and producing said shipment for delivery, sent other goods to its consignees in place of the goods then in defendant's possession, and plaintiff thereupon demanded from defendant delivery of the goods in its possession, or payment of their value, but defendant failed and refused to deliver them to plaintiff or to pay therefor.

"That by reason of defendant's said negligence in failing to notify consignees of arrival, and in failing after arrival to locate said shipment, neither plaintiff nor the consignees learned of the arrival of said shipment at destination until an unreasonable time, to-wit, eight months after its actual arrival and after plaintiff had requested the shipment to be traced, and that said goods were of a perishable nature, and by reason of said delay were rendered valueless.

"That by reason of defendant's aforesaid neglect of its duties, said goods were lost to plaintiff, and it was damaged in said sum of $381.60, for which with interest and costs it asks judgment as prayed."

A motion was made by defendant to strike out the whole of the reply. This motion was overruled by the court.

On the trial it was admitted that the shipment arrived at pier 19, North river, city of New York, on October 6, 1890, and remained there uncalled for by the consignees until December 24, 1890, when it was re-

moved to defendant's warehouse for storage in the city of New York, where it remained until October 22, 1891, when it was sold at auction by defendant to pay freight and other charges, and it was admitted that the sale was in accordance with the laws of New Jersey.

The clauses of the contract of shipment material to this controversy are as follows:

"1.   It being distinctly understood that these companies shall not be responsible as common carriers for said goods while at any of these stations awaiting delivery to such consignee or carrier, but liable as warehousemen only.

"2.   That freight carried by these companies must be removed from the station during business hours, on the day of its arrival, or it will be stored at the owner's risk and expense, and in the event of its destruction or damage from any cause, while in the depot of any company, that the company shall not be liable to pay any damage therefor.

"3.   That the companies will not be responsible for the decay of perishable articles."

The shipment was consigned to Schoellkoph, Hartford & Maclagan to be sold on account of the plaintiff.

The evidence of both parties is that, on the arrival of a shipment, a usage or custom prevails in New York which has been uniformly observed by the defendant and other railroads terminating in said city, of sending a notice stating that the goods have arrived, with book to take receipt for such notice. This notice states that the goods have arrived and the freight is so much. There may be other things on it sometimes; that the goods must be removed within twenty-four hours, or some other period, and if the shipment is not called for within a reasonable time to follow up this personal notice with notice by postal cards at intervals of a week, or such a matter.

There is no evidence in the record tending to prove that defendant gave the consignees the first, or personal,

notice of the arrival of the goods, but there is evidence by two employes of the defendant that at least two notices by postal cards were made out and mailed to the defendant of the arrival of the goods, one on October 8, and the other on December 16, 1890.

Plaintiff's evidence tends to show that these notices were not received by the consignees. A subsequent personal notice was also given to the consignees of the arrival of the goods and a request that they pay the freight and take the goods away. This notice came about in this way. Herf, a member of plaintiff's corporation, testified that the goods were reported as lost; that on November 13, 1890, he made a request of defendant to trace the goods at St. Louis.

Nichols, defendant's freight claim agent at New York City, testified that in the fall of 1890, either at the request of the shipper or the consignees, he could not remember which, he had the goods traced and that they were traced and located at pier 19; that it usually took about ten days to run such a tracer; that as soon as the goods were located he sent his clerk to notify the consignees that the goods were at pier 19 and to notify them to call, pay the freight and take them away.

Nichols was not able to fix the day or the month when this messenger was sent to the consignees, but stated that it was in the fall of 1890.

Foote, Nichol's clerk, testified that about November 10, 1890, he, at the direction of Nichols, went to the office of the consignees and notified Maclagan that the goods were at the pier. He said, "I told him the goods were on the dock, and asked him what disposition they wanted made of the goods; they told me they were not ready just at that time to take it, but probably would a little later on; I asked them if when they got ready to do so, would they send the order or the disposition for it through Mr. Nichols at 26 Exchange place, so that he could answer the tracer and show delivery; that was

what the tracer asked for, to show the delivery; that was as far as I had anything to do with it at that time. . . . I think in about three weeks from that time another tracer came through Mr. Nichols to show delivery, asking to hurry disposition; he handed that to me and I went down again, and said, 'That thing has been laying on the dock a considerable length of time and we would like to get it delivered or get some disposition for it; if you don't accept it very shortly, the chances are it will be put in store,' and he replied: 'Well, we don't know whether we are going to accept it or not, now.' ''

Maclagan said these notices were given, but that they were given in 1891, and about nine months after the shipment was made, and after he had been notified by the plaintiff not to accept the goods.

Memoranda of the postal card notices were kept and witnesses, from these memoranda, swore positively that the postal card notices were made out and that they were quite certain that they were mailed to the consignees.

The evidence offered by plaintiff to show that they were not received was to this effect: that the consignees carefully kept and filed all such notices, which they preserved, and that no such notices were found among the files kept during the years 1890 and 1891; that all mail coming to the office of the consignees came into the hands of either Hartford or Maclagan, both of whom testified that no such postal cards were received by them or either of them.

The bill of lading for the shipment was mailed to the consignees by the plaintiff and received by it in September, 1891.

There was evidence tending to prove that after the goods arrived in New York and were stored at pier 19, they were exposed to dampness and that such exposure would deteriorate them and render them unfit for the purposes for which they were manufactured, to-wit, medical purposes. There was evidence offered by the

defendant to the contrary, and that after such a preparation became unsalable, the bismuth in the shipment would be worth from $40 to $50 after being melted down and extracted.

The goods were tendered the consignees in June, 1891, but they refused to receive them.

At the close of all the evidence defendant offered an instruction in the nature of a demurrer to the evidence which the court refused to give.

Of its own motion, the court gave the following instructions:

"1.    The court instructs the jury that if you believe from the evidence that a custom of giving arrival notices existed, as explained in another instruction, No. 13; and if you further believe from the evidence that no notice of arrival was given by defendant to plaintiff or consignees at any time after arrival; and if you further believe from the evidence that by reason of such failure by defendant to give any arrival notice, or any notice, the plaintiff and its consignees failed to call for the goods at pier 19, North river, New York, where the goods were located, but believed said goods to be lost, and, acting upon this belief, made inquiry for them of defendant, and asked defendant to trace and locate the goods, and the defendant negligently failed to locate said goods within a reasonable time after it was requested so to do; and if you further believe from the evidence that after the expiration of such reasonable time for locating, as aforesaid, defendant did trace and locate the goods and tendered them to plaintiff or its consignees; and if you further find from the evidence that at the time of such tender the goods had deteriorated in value, and that such deterioration was caused, not by inherent defects in the goods, but by their exposure to outside influence while in defendant's possession, and before plaintiff or its consignees had notice of the location of the goods, then your verdict should be for the plaintiff, and the amount of your verdict should be

such sum as you may find from the evidence repre-
sents the deterioration, caused as above indicated, by
the failure, if any, of defendant to locate the goods
within a reasonable time after request so to do and
which had taken place up to that time, and to this total
you may, if you see fit, add interest thereon at the rate
of six per cent per annum from September 15, 1892, the
date when this suit was filed; and if, on the other hand,
you find that at the time of the tender back of the goods
the subnitrate of bismuth had suffered no deterioration
in value, then your verdict should be for the defendant.

"3.   The court instructs the jury that the burden
of proof is upon plaintiff in this case to establish the
following facts by the preponderance or greater weight
of the evidence:   First, that a custom prevailed in New
York in 1890 of giving the consignees located where
this consignee then was, notice by messenger or by mail
of the arrival in New York of the goods for such con-
signee; second, that the consignee in this case never re-
ceived from the defendant any such notices concerning
the shipment in evidence; third, that the plaintiff or the
consignee in this case without having received any no-
tice of the arrival of the goods in New York, requested
the defendant to trace said goods, and that the defend-
ant, after receiving such request to trace said goods,
failed within a reasonable time thereafter to locate said
goods; and, fourth, that said goods were by such delay,
if any, in locating them deteriorated in value; and you
are further instructed that unless such facts are so
proved by the evidence in this case, your verdict must
be for the defendant.

"6.   The jury are instructed that the failure of the
consignee of the goods in question to call and receive
the same, if said consignee did so fail, after the arrival
of said goods at their destination, if they did so arrive,
and within a reasonable time after notice of said ar-
rival, if such notice was given, relieved the defendant
from any liability in this case on account of damage to

said goods, if they were so damaged, after their arrival at their destination.

"12. The court instructs the jury that if three-fourths of their number concur in a result, the jury may return that result as the verdict of the jury; in which event all of the jurors who agree to it shall sign the verdict. If, however, the entire twelve jurors concur in a verdict, the foreman alone may sign it.

"13. The court instructs the jury that if you believe from the evidence that at the date of the shipment and arrival of the goods in question in New York City, a general custom or usage existed at that place and was observed generally by the defendant and other carriers in delivering goods transported by them for delivery there, and which custom was known and relied on by consignee in this case, to the effect that notices of the arrival of shipments in New York City at the place in said city where same might be obtained from the carrier, were uniformly given to consignees located in that part of New York where these consignees were located, by delivering to consignees by messenger a first notice on the day of or day after the arrival of the shipment, and thereafter if the goods still remained uncalled for, by sending by mail to consignees two further notices at intervals of from several days to several weeks, then it was part of defendant's duty, upon the arrival in New York City of the shipment in question, to notify the consignees of said arrival, in conformity with said custom or usage, either by messenger or by mail."

The following instruction was given at the request of plaintiff:

"2. The court instructs the jury that by the phrase 'reasonable time' as used in these instructions, is to be understood in each case such a period of time as would suffice for the performance of each of the respective acts referred to, if the person whose duty it was to perform used in the performance such diligence, care and prudence as a person of ordinary diligence,

care and prudence, under like circumstances would use in the performance of a like duty.''

· At the request of the defendant the court gave the following instructions:

"4. If the jury find from the evidence in this case that the goods in question were transported over the defendant's line from St. Louis to New York, and arrived in New York on or about October 6, 1890; that on or about October 9, 1890, the defendant notified the consignee in New York of the arrival of said goods by mail, and also by a notice delivered thereafter by messenger at the place of business of said consignee in New York; that the consignee made no effort thereafter, or at any time, to call at defendant's pier in the city of New York, where said goods were then stored, and receive the same, and that said goods remained uncalled for at said pier until on or about December 24, 1890, and at that time they were removed to defendant's storehouse in New Jersey, where said goods remained uncalled for by said consignee until on or about October, 1891, and that they were then advertised for sale and sold by defendant to pay the charges thereon; then they are instructed that plaintiff can not recover in this action, and your verdict must be for the defendant.

"5. The court instructs the jury that failure by the carrier to deliver goods within a reasonable time to the consignee does not constitute a conversion of the goods, but is a mere breach of the contract, and the consignee can not refuse to accept the goods on the ground of delay and recover their full value unless the delay destroys the value of the goods entirely, or causes what is equivalent to a total loss. It is the duty of the consignee of goods upon notice of their arrival, whether early or late, to call for and receive the goods within a reasonable time after such notice, and if he fails to do so the carrier is not responsible for any deterioration

in their value thereafter occasioned by the delay of the consignee in failing or refusing to receive the goods.

"If in this case the jury believe from the evidence that the plaintiff or its consignee at any time after they received notice of the arrival of the goods, if you find such notice was at any time given, failed to take the goods, then the defendant is not liable for any deterioration in their value which may have occurred after the giving of such notice and the failure of the plaintiff or the consignee to call for the goods within a reasonable time thereafter.

"7.    With respect to the notices by mail to the consignee of this shipment, in evidence, the jury are instructed that if they find from said evidence such notices were deposited in the United States mail in New York at the time stated in said evidence, addressed to said consignee, then and in that event you may presume or infer that such notices were afterwards received by said consignee; and if you further find from said evidence that thereafter said consignee made no effort to receive the goods described in said notices, whereby said goods were damaged by being kept in store by defendant, then you are instructed that plaintiff can not recover in this action for such injury to said goods.

"8.    The court instructs the jury that under the contract in evidence, if they find from the evidence in this case that the goods here sued for were perishable, and that said goods deteriorated in quality and became worthless by reason of natural inherent defects in said goods while said goods were stored in defendant's warehouse, then and in that event the plaintiff is not entitled to recover in this action on account of such deterioration or destruction of said goods while so stored by defendant.

"9.    If the jury find from the evidence in this case that the defendant gave to the consignee in this case shipment notice on or about either October 6, 1890, or December 15, 1890, by mail, of the arrival of the

goods in question in New York, and that said consignee never called thereafter, or at any time, for said goods at defendant's pier in New York, where said goods then were, then they are instructed that plaintiff can not recover in this action, and your verdict must be for the defendant.

"10. If the jury find from the evidence in this case that after the arrival of the goods in question in the city of New York, to-wit, on or about the month of November, 1890, the defendant gave to the consignee of said goods personal notice by messenger, at the place of business of said consignee in New York, of the arrival of said goods, and that said consignee never called thereafter, or at any time, for said goods at defendant's pier in New York, where said goods then were, then they are instructed that plaintiff can not recover in this action, and your verdict must be for the defendant.

"11. The court instructs the jury that under the contract in evidence the defendant was not required to make a personal delivery of the goods here sued for to the business house of the consignee.''

*Geo. S. Grover* for appellant.

(1) Under the contract of shipment in evidence the liability of defendant ceased absolutely upon the arrival of this case, in good order, in New York, and its storage there at pier 19, without regard to the question of notice. Holtzclaw v. Duff, 27 Mo. 392; Rankin v. Railroad, 55 Mo. 167; Gashweiler v. Railroad, 83 Mo. 112; Stanard Milling Co. v. Transit Co., 122 Mo. 258. (2) And that express agreement could not be varied by parol, by proof of a custom in New York, tending to abrogate its terms. Wolff v. Campbell, 110 Mo. 114; Evans v. Mfg. Co., 118 Mo. 548; Bank v. Railroad, 132 Mo. 500. (3) Upon the admitted fact here disclosed, that the consignee never made any effort to call for, and

receive, the goods at the pier, at any time between October 6, 1890, and December 24, 1890, as the contract of shipment required him to do, or at the warehouse, from December 24, 1890, to October 22, 1891, although repeatedly notified to call and remove them, as well as the further fact that he positively refused to do so after such notice, the court below should have directed a verdict in favor of defendant.  Authorities cited, supra; this case, 70 Mo. App. 283; this case, 78 Mo. App. 313.

*Finkelnburg, Nagel & Kirby* for respondent.

(1)    The liability of defendant did not cease absolutely upon the arrival of the case, without regard to the question of arrival notice.   70 Mo. App. 282.   (2) The custom did not vary the contract, because the latter, "nowhere in terms states that notice of arrival should not be given."   70 Mo. App. 283.   (3) The issues as presented by the instructions follow the law of the case as established by this court in former decisions, the instructions fairly presented the whole case, and this judgment should not be disturbed.   Parsons v. Mayfield, 73 Mo. App. 309; Herf & F. Chemical Co. v. Lackawanna Line, 70 Mo. App. 274; Herf & F. Chemical Co. v. Lackawanna Line, 78 Mo. 313.

BLAND, P. J.—1.   This is the fourth appeal of this case.   The pleadings have not been changed since the first appeal.   The motion to strike out the reply is the same as the motion to strike out that pleading on the first trial of the cause which was then overruled, in respect to which ruling of the trial court, this court said: "The reply was not a departure under our practice act, but even if it were the only way of taking advantage of it was, by special demurrer or motion to strike out.   The appellant by going to trial without doing either waived the objection.   Scovill v. Glasner, 79 Mo. 449; Spurlock v. Railroad, 93 Mo. 537; Ibid,

104 Mo. 658; Gelatt v. Ridge, 117 Mo. l. c. 562; Philibert v. Burch, 4 Mo. App. 470; Mortland v. Holton, 44 Mo. l. c. 64." Chemical Co. v. Lackawanna Line, 70 Mo. App. l. c. 280.

The ruling on the motion to strike out the reply is, as to this case, *res adjudicata*.

2. It is contended by defendant that its liability as a common carrier under the contract of shipment, absolutely ceased upon arrival of the shipment in good order in New York and its storage there at pier 19 without regard to the question of notice.

The evidence of both parties shows that there was a well-established usage theretofore observed by the defendant, in respect to its shipments to these consignees, as well as all other consignees, that railroads having their termini in New York should give a personal notice to the consignees of goods consigned to parties in that city of their arrival, on the day or not later than the next day after their arrival. The evidence also shows that the consignees had knowledge of this usage and relied and acted upon it and depended upon defendant, in respect to the shipment in question to give them the customary notice. In respect to the duty of the defendant to have complied with this usage this court on the first appeal said:

"No notice to the consignees of the arrival of goods, shipped by railway, is required under the laws of Missouri, where the shipment arrives on time. Gashweiler v. Railroad, 83 Mo. 119, and authorities cited. The contract of shipment was made in Missouri, between a resident corporation of Missouri and a corporation having an office and doing business in Missouri, and is governed by the laws of Missouri. Gunter v. Bennett, 39 Tex. 303; Robinson v. Merchants Dispatch Co., 45 Iowa 470; Pennsylvania Co. v. Fairchild, 99 Ill. 260; First National Bank v. Shaw, 61 N. Y. 283. However, should a usage become established at any locality in Missouri, and be uniformly observed by railway companies, to

give notice of the arrival of freight to consignees at such locality, the usage, notwithstanding the general rule dispensing with notice, would be an exception to the general rule, and the carrier would be required to give the notice in order to relieve itself of negligence in the event of loss of or damage to the freight while in its possession as warehouse-keeper. Pindell v. Railroad, 34 Mo. App. 683; Frank v. Railroad, 57 Mo. App. 186. It is admitted that such a usage was uniformly observed in New York City by railways entering that city, and by the D. L. & W. R. R. Company, the appellant's terminal line. This usage was binding upon the appellant, unless its observance was dispensed with by the special contract of shipment made in this case. The contract nowhere in terms states that notice of arrival of the goods should not be given. Nor does the requirement that the consignee should call for the goods on the day of their arrival, as contended for by the appellant, dispense with an observance of the usage, but on the contrary makes its observance the more necessary, in order that the consignee might be able to make a timely call and comply with this requirement of the contract." Chemical Co. v. Lackawanna Line, 70 Mo. App. l. c. 282-3.

We adhere to that ruling.

3. Defendant contends that, "Upon the admitted fact here disclosed, that the consignees never made any effort to call for, and receive, the goods at the pier, at any time between October 6, 1890, and December 24, 1890, as the contract of shipment required him to do, or at the warehouse, from December 24, 1890, to October 22, 1891, although repeatedly notified to call and remove them, as well as the further fact that he positively refused to do so after such notice, the court below should have directed a verdict in favor of defendant."

It is an established fact in this case that the goods arrived on time and were stored by appellant at pier 19. Its liability as an insurer terminated on the arrival

and storage of the goods on October 6, 1890, and it was thereafter only liable as a warehouse-keeper and its liability, if any, must arise on account of its failure to comply with its contract to deliver the goods to the consignees. One of its duties under the contract was to give the consignees the customary notice by messenger of the arrival of the goods. The consignees had a right to and did rely upon such notice. It was, therefore, under no obligation to call for the goods until such notice, or some other notice sufficient to inform it of the arrival of the goods, was given. There is no evidence that notice by messenger of the arrival of the goods was given on the day of their arrival or on the next day thereafter. Appellant failed to observe the usage in this respect, but it introduced evidence tending to show that on October 9, 1890, and again on December 15, 1890, notices were mailed to the consignees informing them that the goods had arrived and requesting it to call at pier 19, pay the freight charges and take the goods away. If either of these notices were received by the consignees, then plaintiff is not entitled to recover. If the notices were mailed, the presumption is that they were received.

Hartford and Maclagan testified that all the mail coming to the office of the consignees was received by one or the other of them and that notices of the arrival of shipments consigned to their company were carefully filed and preserved. They testified positively that they, nor either of them, never received the notices claimed by defendant to have been mailed to them and that no such notices were found among their files where they should have been, if received.

On the third appeal of this case (87 Mo. App. 667) we held that this evidence of Hartford and Maclagan was of some value and of sufficient potency to authorize the question, as to whether or not the notices had been received, to be submitted to the jury. It was, therefore, a question of fact for the jury to determine

whether or not these postal card notices had been received. The question was fairly submitted to the jury by the instructions, and while it seems to us that on this issue the verdict is against the greater weight of the evidence, yet it is not competent for us as an appellate court to set aside the verdict on the ground that we regard the evidence, or the weight of the evidence, differently from the jury. The jury may not have believed the appellant's witnesses, and certainly did not, otherwise they would have found a different verdict.

4. In respect to the personal notice given by Foote to Maclagan, it is self-evident that if he gave those notices at the time he testified he gave them, the verdict should have been for the defendant. Maclagan admits that Foote gave him personal notice of the arrival of the goods, but testified that the notice was not given until nine months after the shipment had been made and after he had been notified by the plaintiff not to receive the goods. Here again was an issue of fact for the jury to pass upon, and their finding is conclusive on this court, although it appears to us the finding on this issue of fact was against the greater weight of the evidence. To find as they did, the jury must have disbelieved both Nichols and Foote, in respect to the time the notices were given. Both of these witnesses, as to the time the notices were given, are corroborated by the evidence of Herf, who testified that he requested the defendant to trace the goods as early as November 13, 1890.

5. To authorize the plaintiff to abandon the goods and to look to defendant for their value or loss on account of deterioration, it was incumbent on it to show to the reasonable satisfaction of the jury that appellant had by its misconduct kept the goods in an unsafe place until they had materially deteriorated. Plaintiff's evidence tended to prove that while kept at pier 19, they were exposed to dampness and that such exposure deteriorated the goods and rendered them unsalable as

medicine. There was evidence to the contrary, but the jury on this issue found in favor of the plaintiff.

6. All of the issues of fact raised by the pleadings, and of which there was any evidence, were fully, fairly and plainly submitted to the jury by the instructions given by the court. The appellant's refused instructions were either covered by those given, were inappropriate to the issues, or stated erroneous propositions of law and were rightfully refused.

7. Appellant contends that the action sounds in tort and that the court erroneously instructed the jury that interest might be allowed by them on the damages awarded.

The action is for a breach of the contract to ship and deliver the goods. The defendant breached the contract in failing to give notice to the consignees of the arrival of the goods, as required by the custom prevailing in New York City. The contract of shipment was made with this custom in view and with the tacit understanding that defendant would observe it, therefore, the custom formed a part of the contract and was as much the subject of a breach as any other provision in it. Appellant, also, in the trial of the cause, treated the action as one for breach of contract and asked and received instructions on the theory that the suit was for a breach of contract. It is the well-settled appellate practice in this State, that appellant will not be permitted to shift his position in the appellate court and have the cause determined on a theory different from the one on which he elected to try it in the court below. Hall v. Goodnight, 138 Mo. 576; Stewart v. Outhwaite et al., 141 Mo. 562; State to use v. O'Neil, 151 Mo. 67; Guntley v. Staed, 77 Mo. App. 155; Pope v. Ramsey & Ramsey, 78 Mo. App. 157.

Discovering no reversible error, the judgment is affirmed. *Reyburn,* and *Goode, JJ.,* concur.