EMMA NEAL, APPELLANT, v. TWELFTH & GRAND AVENUE BUILDING COMPANY, RESPONDENT.—70 S. W. (2d) 136.

Kansas City Court of Appeals.    April 2, 1934.

*Harry G. Kyle* and *Walter A. Raymond* for appellant.

*Hook & Sprinkle* for respondent.

TRIMBLE, J.—April 7, 1930, about three o'clock in the afternoon, plaintiff, an elderly woman past sixty years of age, together with a woman companion, was walking east along the sidewalk on the south side of 12th Street in Kansas City, Missouri, near a building eight stories high, in process of erection by defendant, at the southeast corner of 12th Street and Grand Avenue in said city. Defendant was not actually doing the work itself, but having it done by sub-contractors. The north wall of the building abutted upon the south edge of the sidewalk. The two women were walking east as above stated, and were, therefore, on the right or south side of the sidewalk, plaintiff's companion being next to the building and plaintiff immediately north of her. At this moment a piece or stick of wood about thirty-seven inches long and two inches square fell from a window on the seventh floor in the north or abutting wall of said building, at which window a man was working; said piece of wood struck plaintiff's companion on the shoulder, and, glancing therefrom, fell end down on plaintiff's right ankle driving two large splinters into her ankle joint and bringing her to her knees. The record shows that she was disabled and that her ankle was rendered stiff and painful, so that at the time of the trial (three years after the injury), the ankle swelled during the day and plaintiff "can. hardly get around." She kept hot packs on it at night. Her physician testified: "There is limitation of movement in her ankle. The injury is undoubtedly permanent." Since there is no complaint as to the size of the verdict, there is no need of going further into the nature and extent of her injuries.

The petition alleged general negligence against the defendant in permitting the board to fall *and strike* the plaintiff.

In an amended answer, on which the case was tried, defendant, after a general denial, set up that the alleged negligence was performed by an employee and servant "of an independent contractor, to-wit: The Voightman Metal Window Company" and. not by any servant or employee of defendant, and the defendant has no control, power, regulation, or right to the same, over those causing plaintiff's injury.

The reply to the answer, in addition to a general denial, set up the following:

"Further replying plaintiff states that defendants were engaged in constructing said building and in addition to other work were engaged in removing the windows, placing large metal weights therein, replacing said windows, and fastening the same in; that the work then going on, including the work with said windows, endangered plaintiff and other persons passing along said public sidewalk unless great precaution was taken; that by reason thereof defendants could not shift their responsibility by employing an independent contractor to do such work, and defendants are legally liable the same as if they were themselves doing the work.

"Plaintiff further states that Ordinance No. 54234 of Kansas City, Jackson County, Missouri, which was in full force and effect on said date, required defendants to protect pedestrians passing along the public sidewalk by fencing off said sidewalk or placing a covering thereover; that defendants did not fence off said sidewalk or place a covering thereover while said work was in progress; that by reason of the danger of said work to persons using said public sidewalk and by reason of defendants' violation of positive law, and failure to fence said sidewalk, or place a covering thereover the defendants failed to perform their nondelegable duty in such respects, and cannot escape liability therefor on the theory an independent contractor was guilty of negligence."

Originally there were two other defendants, one of whom was a non-resident, and the case was dismissed as to them.

The trial being had, the jury returned a verdict of $1000 in plaintiff's favor. A motion for new trial was filed which the court sustained "because the court erred in refusing to give a peremptory instruction for defendant at the close of all the evidence."

Thereupon plaintiff duly appealed.

While the trial court's reason for granting a new trial was explicit to the extent of saying it erred in refusing to give a peremptory instruction for the defendant at the close of all the evidence, yet it is not in itself explicit as to *why* the court considered such refusal error. But it becomes explicit when we consult the record with reference to the "peremptory instruction for defendant at the close of all the evidence," and which the trial judge says he erred in refusing to give and therefore a new trial is granted. The peremptory instruction for defendant so referred to is instruction "B" which reads as follows:

"Now comes defendant 12th and Grand Avenue Building Company at the close of all the evidence and states to the court that under the pleadings and the evidence, plaintiff's alleged injury *was the result of an act of an independent contractor and therefore defendant* 12th and Grand Avenue Building Company *is not liable*, and requests the court to so instruct the jury. (Refused.)" (Italics mine.)

Hence it is manifest that the reason the court sustained the motion for new trial was because it entertained the view that the defense of independent contractor should have been upheld by the giving of said peremptory instruction.

It is well settled that when the trial court specifies a reason or reasons for sustaining the motion for new trial, this is considered, in legal effect, as overruling all other reasons contained in the motion. Thiele v. Citizen Ry. Co., 140 Mo. 319; Porter v. Chicago B. & Q. R. Co., 325 Mo. 381, 391; Kersten v. Hines, 283 Mo. 623, 634; and the presumption is indulged that the court's ruling on all such other reasons is right, until the respondent shows to the contrary. [State ex rel. v. Thomas, 245 Mo. 65, l. c. 73, 74.] Nothing of this kind has been done or even attempted. Hence the case is before us on the single issue of whether the court erred in the refusal of said peremptory instruction because the defense of independent contractor should have been upheld. [Scott v. Kline's, Inc., 284 S. W. 831, 832.] And the question of whether said peremptory instruction should have been given is one of law, in which the trial court can exercise no discretion. [Mattocks v. Emerson Drug Co., 33 S. W. (2d) 142.]

In considering this question, as stated in Scott v. Kline's, Inc., supra, "plaintiff must be given the benefit, not only of all testimony that was adduced in her behalf, but also of any favorable testimony that was given by defendant's witnesses, in addition to which she must be allowed the benefit of reasonable inferences of fact on all the proof." Mindful of this rule, the record discloses, in addition to the facts hereinabove stated in setting forth the case, the following additional facts:

Twelfth Street was, and is, a heavily traveled street at the point in question and many people passed there daily and especially in the afternoon and at three o'clock said street was "generally pretty well crowded, lots of traffic along there." Defendant contends that the building was "practically finished," but the record discloses evidence to show that the building in question "was being erected at the time" the injury occurred. "It was still in course of construction." "Half a dozen kinds of work was going on . . . electricians, bricklayers, plasterers, cement finishers, carpenters." Charles Beck, whose deposition was taken by defendant, but which was introduced and read by the plaintiff, testified that he was working on a window on the seventh floor. He used the stick that fell to hold up the outside window sash while he was working putting weights in each window consisting of two seven-pound weights and two fifteen-pound weights. He worked from the inside. There was an eight-inch ledge to these windows. He would "first take off the center piece on the back window, I let it down and raised the back one. I took out the pockets on each side and took the window out. The side pieces to the pockets are in two pieces, one ten inches long and

the other twenty . . . After taking out these strips I dropped my back window down, I took both windows and put them on the floor. I put my chains on the weights, then put the chains in the sill. There is a little pulley on each one. Then I put my windows back in, raised my windows, put my pocket in, and that is what you call adjusting a metal window, putting the weights in it. At the time of the accident I was putting on the right-hand side pocket. There was no scaffold or anything at the outside of the window. They had taken it all down. There was nothing outside the window as a protection against anything falling except the window sill . . . There was nothing else to prevent anything falling. The accident happened about 3:20. The timber fell out on the public sidewalk. The sidewalk there was open for public travel. . . . The south edge of the public sidewalk is right against the north side of the building. . . . All my checks for the work came from the Voightman Metal Window Company.''

Beck also testified that ''On April 7, 1930, I just worked on the window, like I showed you. In the middle of the afternoon, I was working on the seventh floor. I know just about what time it happened. That was on the north side of the building. I was working on the window, putting the window pieces in there and on the outside window (sash) I had a stick to hold the window up. *You had to have it.* (Italics mine.) . . . that stick from where I was working must have slipped some way or other and fell to the ground and I hollered.''

He further testified he was acting under instructions of the Voightman Metal Window Company. ''The respondent Building Company gave us no orders nor exercised any control over me in the work.'' There was no evidence of any negligence on the part of the workman, Beck, or of anyone else, directly or indirectly, causing the stick to fall.

The record also discloses that there was in effect, at the time of the injury, Section 6, Article 15, of an ordinance of Kansas City, constituting the Building Code of Kansas City, Missouri, which said Section 6 is as follows, to-wit:

''6. Temporary Roof Over Sidewalk.

''When buildings are erected of a height greater than four stories and such buildings are near the street line, there shall be built over the adjoining sidewalk a substantial temporary roof, covered by two layers of 2-inch plank. Such roof shall be maintained as long as material is being used or handled on such street front above the level of the sidewalk and shall be kept properly lighted at night.''

It is manifest that plaintiff's petition pleads *general* negligence only, in that defendant allowed a stick or piece of timber to fall *and strike* plaintiff who at the time was a pedestrian walking upon an abutting public sidewalk. In fact this is conceded by defendant in

its brief where it says the "petition contains only a charge of general negligence;" and further states that "plaintiff's evidence showed without contradiction that an employee of an independent contractor, *through negligence in handling the stick,* caused it to fall." We cannot agree to the italicized part of the above quoted statement. The evidence does not disclose what caused the stick to fall, only that during the process of the work it fell in some unaccountable manner. Nor can we accept defendant's argued *conclusion* as to the theory on which plaintiff's petition proceeds, namely, that it goes upon the doctrine of *res ipsa loquitur.* As we view the pleadings in this case, the petition declared on general negligence, the defendant's answer set up the defense of independent contractor. *To meet this defense* the reply set up the specification of the general negligence pleaded. Of course, it is well settled that a reply cannot be used as a substitute for the petition, nor set up, for the first time, the cause of action relied upon. [Mathieson v. St. Louis & San Francisco R. Co., 219 Mo. 542, 552.] "It is a fundamental rule of pleading that a plaintiff must recover, if at all, on the cause pleaded in his petition and on no other cause." [Platt, Jr., v. The Parker-Washington Co., 161 Mo. App. 663, 669.] . . . "The reply is a purely defensive pleading and its sole office is to interpose a defense to (or to deny) new matter pleaded in the answer." [Ibid: Rhodes v. Holladay-Klotz Land, etc., Co., 105 Mo. App. 279.] In Smissman v. Wells, Receiver, 213 Mo. App. 474, l. c. 482, it is said:

"It is urged, however, that the plaintiff, by the allegations in his reply, 'has lifted his case from the realm of *res ipsa loquitur* and that the charge is, therefore, not one of general, but of specific negligence, to establish which plaintiff is held to strict proof.' This position is not sound. The reply herein does not change the theory on which this suit was brought. It simply contains new matter not inconsistent with the petition, constituting a defense to the allegations set up in the answer."

While it is true that a reply cannot be permitted to introduce a departure, yet there is no departure here. As said in Ellyson v. Missouri Power & Light Co., 59 S. W. (2d) 714, 717—

"A reply is not open to the charge of a departure where it constitutes a defense to new matter in the answer and is consistent with the petition (Rhodes v. Holladay-Klotz Land & Lumber Co., 105 Mo. App. 279, 79 S. W. 1145), or where there is nothing in it which could not have been given in evidence under the petition, and it merely pleads the evidence by which the plaintiff expects to sustain the charges in his petition (Booher v. Allen, 153 S. W. 238)."

While the reply in the case at bar introduces no departure, yet if it had, it would seem that defendant waived it since there was no objection to it in any manner either by special demurrer, motion to strike out or otherwise. [Herf, etc., Chemical Co. v. Lackawanna

542

Line, 100 Mo. App. 164, 178, and cases cited; Bowles v. Quincy, O. & K. C. R. Co., 187 S. W. 131, 136.]

The failure to put a cover over the street was not explicitly pleaded in the petition but was admissible in evidence in support of the general charge of common law negligence arising under the circumstances stated in the petition. See Bailey v. Kansas City, 189 Mo. 503, 514, where it is said:

"If a cause of action is based directly on a violation of a duty imposed alone by a municipal ordinance, the pleading should set forth the specific ordinance in hand because courts will not take judicial notice of its existence. [City of Tarkio v. Loyd, 179 Mo. l. c. 605; Inhabitants of Butler v. Robinson, 75 Mo. 192.] But if an ordinance of a city is used as a mere matter of evidence, no good reason is perceived why it should be pleaded; for to plead evidential facts is bad, and, on principle, the rule applies to ordinances. [Robertson v. Railroad, 84 Mo. l. c. 121; Danker v. Goodwin Mfg. Co., 102 Mo. App. l. c. 731.] Now, the case under the fourth amended petition is not based on the violation of a municipal ordinance, but is based on the violation of a duty imposed by general law. Therefore the objection in the form made was properly overruled." [See also Seitz v. Pelligreen Const., etc., Co., 203 S. W. 503, 505.]

It will not do to say that the allowing of the board to fall out of the window was the sole or main act of negligence that caused the injury, and not the failure to have a protecting cover over the sidewalk. In Hayes v. Michigan Central R. Co., 111 U. S. 228, l. c. 241, it is said:

"It is further argued that . . . the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause causa causans, this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it causa sine qua non, a cause which if it had not existed, the injury would not have taken place, an occasional cause?"

Nor can it be urged that the rule as to independent contractor not constituting any defense, cannot apply to the case at bar on the theory that the doing of the work without a protecting cover over the sidewalk was neither negligent nor inherently dangerous. We think that it was both negligent and involved inherent danger to those passing on the unprotected sidewalk beneath. [45 C. J. 861, Sec. 286.] The same work, 45 C. J., at page 868, Sec. 292, states the rule as to the futility of attempting to escape liability by means of getting an independent contractor to do the work. [See also Notes (a) and (b) to said Section 292 and Sections 309-476 of said C. J.] The fact that there was heavy travel on the sidewalk at the point in question would seem to render it gross negligence to neg-

lect to have the sidewalk covered while doing the work above it. [Franke v. City of St. Louis, 110 Mo. 516, 1. c. 523.]

As to the work which was being done being inherently dangerous to those passing on the sidewalk below, see McHarge v. Newcomer, 100 S. W. 700, 705; and as to the inability to escape liability by employing an independent contractor, see 23 A. L. R., Annotated, 1054; also Sec. 15, p. 1055 of same report; Carson v. Blodgett Const. Co., 189 Mo. App. 120, 174 S. W. 447, 448; Missouri Valley Bridge, etc., Co. v. Ballard, 116 S. W. 93, 98; Loth v. Columbia Theater Co., 197 Mo. 328, 354; Privett v. Jewett, 225 S. W. 127, 128; 39 C. J., p. 1336, sec. 1546 (1); Ward v. Ely-Walker Dry Goods Co., 248 Mo. 348, 369.

Nor can defendant escape the consequences of its failure to protect persons passing on the sidewalk on the theory that while the fall of material might have been anticipated while the *wall* of the building was being erected, nevertheless the fall of the stick could not have been foreseen. It was something that would be very likely to fall, and, when it did, would injure anyone who was passing along the unprotected sidewalk. Hence defendant would become liable when it did fall and injure plaintiff. [Moordale v. Park Circuit, etc., Co., 58 S. W. (2d) 502.]

It seems that because certain merchants on the same side of the street complained of the cover that was placed over the sidewalk when construction of the building began, a city inspector, on his own authority, ordered it removed before the building was completed. He had no authority to do so, and defendant knew the fact of its removal and yet allowed the work to proceed without a cover. The order of the inspector was no defense. [City of Centralia v. Smith, 103 Mo. App. 438, 440-441.]

The court erred in holding he should have set the demurrer aside for the reason hereinbefore disclosed, and in granting a new trial on that ground. Hence the judgment directing that to be done is reversed and the cause is ordered remanded with directions to set said judgment aside, reinstate the verdict and render judgment thereon as of the date of the original judgment. All concur. We may pause to say here that appellant has wholly failed to comply with our Rule 30 relating to index. An index is a great help to the court in studying the record and obtaining the facts therefrom, and saves much time and labor in the preparation of an opinion. The fact that we have not, *as yet*, attached a penalty to our rule in reference to index, is not a good reason for ignoring or violating it.