Argued January 22; affirmed February 4, 1947

# PATE *v.* PARKER ET AL.

(177 P. (2d) 250)

*Frank S. Senn,* of Portland (Senn, Recken & Recken, of Portland, on the brief), for appellants.

*W. M. Davis,* of Portland (Moulton & Davis, of Portland, on the brief), for respondent.

WINSLOW, J. (Pro tem.)

At the time of the accident which resulted in the death of Wallace Earl Pate, the minor son of Carl Pate, Parker-Schram were engaged in carrying out a contract with the State Highway Commission for grading and paving of a portion of the Schmeer Road. For the purpose of procuring material for making a fill in con-

nection with said contract, appellants, through the State Highway Commission, obtained authority from Multnomah County, Oregon, to make the excavation that is involved in this litigation.

The scene of the accident was near Kenton Boulevard and Hunt Street near the city limits of the City of Portland. The property belonged to Multnomah County, Oregon. The arrangement for "borrowing" material did not give the appellants exclusive possession or control of the property. It was unfenced, and the ground between Kenton Boulevard and the embankment was substantially level. Appellants operated by the use of a steam shovel. The manner of operating is described in appellants' brief, page 7, as follows: "The manner of operating a shovel is to dig into the bank at the bottom of the slope until the overhang falls." This resulted in keeping the face of the excavation substantially perpendicular, and, at the time of the accident, it was of a height variously estimated from thirty-five to fifty feet.

The operator of the steam shovel on the Friday night prior to the accident, which was the last operation of appellants prior to the accident, attempted to clean off the face of the excavation, or, as he termed it, "trim the bank as best I could," by use of the shovel.

The record abundantly establishes that children from the neigborhood and from some distance from the operation were in the habit of frequenting the place and playing on the premises. Vanport is about a mile from the excavation. This condition had existed prior to the time appellants commenced their operation and continued during that operation.

On Sunday, June 10th, decedent went to the premises, and, while he was playing with a girl at

the foot of the excavation, the overhanging dirt at the top of the excavation gave way causing a slide which completely covered and caused the death of both decedent and the girl with whom he was playing. Their bodies were found some ten feet from the foot of the excavation.

The embankment is of a sandy material except the top soil. At the time of the accident, none of the appellants' employees were present. The shovel was not being operated. There were no fences or guards of any nature, no warning signs or other methods employed to warn children or other visitors of any danger at or near the excavation.

There is but one question presented by this record, and that is: Was the evidence sufficient to sustain the verdict? This question is raised, first, by appellants' motion for nonsuit and, second, by their motion for directed verdict. While appellants present some other questions in their brief, no other questions are presented by the bill of exceptions.

■ For a correct determination of the issues involved in this appeal, it is necessary to determine the legal status of respondent's deceased at the time of the accident. It is contended by appellants that the child was a trespasser, and, therefore, the only duty they owed to the child was that required by the law to trespassers. It will be remembered that the place at which the accident happened was on public property—unfenced, open to the street, with no trespass signs posted—upon which children had been in the habit of playing for years. In that state of the record and on authority of *Cooper v. North Coast Power Company et al.*, 117 Or. 652, 244 P. 665, 245 P. 317; *Wheeler v. City of St. Helens*, 153 Or. 610, 58 P. (2d) 501; *Bur-*

*roughs v. Pacific Tel. & Tel. Co.,* 109 Or. 404, 220 P. 152; and *Cornucopia Gold Mines v. Locken,* 150 F. (2d) 75, we hold that respondent's deceased was not a trespasser as to appellants.

■ Having reached the conclusion that respondent's deceased was not a trespasser as to appellants, the next question is: What was appellants' duty to the child? The rule with reference to the matter is laid down in *Cooper v. North Coast Power Company,* supra, and required appellants to provide such protection as would guard against any contingency that was reasonably to be anticipated.

Appellants contend that they were not charged with knowledge that children would frequent the place and play on or near the embankment. This contention must be determined against appellants for two reasons.

■■ First, we hold that the general nature of the operation, its location and proximity to a thickly settled neighborhood and the fact that it was public property, a sand bank, unfenced and unguarded, imputed to appellants the knowledge that the premises would in all likelihood be used by the children of the neighborhood upon which to play during the absence of appellants from said operation. The inherent inclination of children to roam the neighborhood and to play with anything that seems to them will afford some enjoyment is known to everyone.

Probably the leading case upon this subject is *Temple v. McComb City Electric Light and Power Company,* 89 Miss. 1, 42 So. 874, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, 11 L. R. A., (N. S.) 449. In that case a small boy climbed a tree and came in contact with an electric wire maintained by the electric company.

The court said on page 7:

> "Whether the appellee knew that this particular small boy was in the habit of climbing this tree or not, it is clear from the averments of the declaration that it did know the tree, the kind of tree, and, knowing that, knew what any person of practical common sense would know—that it was just the kind of a tree that children might climb into to play in the branches. It is perfectly idle for the appellee to insist that it was not bound to have reasonably expected the small boys of the neighborhood to climb that sort of tree. The fact that such boy would, in all probability, climb that particular tree, being the kind of tree it was, was a fact which, according to every sound principle of law and common sense, this corporation must have anticipated. The argument that it did not almost suggests the query whether the individuals composing this corporation, its employes and agents, had forgotten that they were once small boys themselves. The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. This court, so far as the exertion of its power in a legitimate way is concerned, intends to exert that power so as to secure, at the hands of these public utility corporations, handling and controlling these extraordinarily dangerous agencies, the very highest degree of skill and care." *Temple v. McComb City Electric Light and Power Company,* supra.

If there is anything more attractive to children than a good tree to climb, it is a good sand bank in which they can play, dig holes and climb.

Another case teaching the same doctrine as the Mississippi case, from which we have quoted above, is *Fink v. Missouri Furnace Company,* 10 Mo. App.

61, which involves a sand bank. At page 69 of the opinion, the court said:

"Upon the first question we are clear of doubt, upon principle and authority, that the defendant was under a duty either to prosecute the work of excavating in a different manner than by undermining, or else to maintain a fence or other safeguard against trespassing children. Persons who carry on a dangerous work in a neighborhood where there are many small children are fairly bound, we think, to take notice of the habits of small children. The managing agents of the defendant were bound to know that nothing is more attractive, or more tempting, to small children than an excavation in a sand bank, or a pile of loose sand in which they can play. They were bound to know that in a populous neighborhood where there were many small children, the work of excavating such a pit by undermining would be highly dangerous to them, unless some measures were taken to keep them away from it. And while it is true that no person is bound to take better care of his neighbor's children than his neighbor is bound to take of his own children; * * * yet in a neighborhood where there are many small children, a proprietor ought reasonably to anticipate that small children will, in spite of the exercise of due care on the part of their parents, frequently escape and run into danger." *Fink v. Missouri Furnace Company,* supra.

We therefore hold that, under the circumstances as disclosed by this record, appellants were bound to know that this sand bank would be used by the children of the neighborhood over the week-end and while they were away from their operations.

Second. The record in this case affirmatively establishes that Charles T. Parker, one of the appellants, actually knew that the place was being used by the children as a playground and that he warned

them of the danger. We take the following from page 172 of the transcript:

"Q Now, did you know that any children were playing on the side of the bank there before the happening of the accident?

"A Well, there was some children around while we were working there occasionally, and they were told to keep out and advised—   *   *   *

"The Witness: I told them.

"Q (By Mr. Senn) Did you tell them?

"A Yes. I explained the danger of that type of bank and asked them to keep out. That is while we were working there."

■ Again, appellants contend that the children playing over the week-end upon the embankment and burrowing therein constituted an intervening cause. The record shows that at the time of the slide no children were playing on the embankment near the place from which the slide started. The slide started from the overhanging top soil. There is nothing in the record to show that at the time anyone was playing near the top of the excavation, and, for that matter, there is nothing in the record to show that anyone had played near the top of the excavation, the place from which the slide started. This matter was fairly submitted to the jury, and the finding of the jury concludes the matter.

These questions having been disposed of, the only remaining question is: Was there any substantial evidence to sustain the allegations of plaintiff's complaint with reference to the charges of negligence?

■ The evidence abundantly sustains the proposition that, when appellants left the operation on the Friday night before the accident, they left an overhanging ledge at the top of the excavation estimated in width from one and a half to ten feet. That is the substance

of the first charge of negligence. Again, appellants are charged with negligence in not keeping some watchman on the premises to guard the same, in failing to erect a guard or barricade around the dangerous embankment, and in failing and neglecting to warn or caution children coming thereto, including said deceased, of the great and imminent hazard of the falling of said embankment. The evidence abundantly sustains these charges. In fact appellants make no contention to the contrary. We therefore hold there is substantial evidence to sustain the charges of negligence against appellants.

As we have reached these conclusions, it follows that the judgment ought to be and is hereby affirmed.

KELLY, J., did not participate in this opinion.