LEON A. M. HICKMAN, APPELLEE, v. PARKS CONSTRUCTION COMPANY, A CORPORATION, APPELLANT.
76 N. W. 2d 403

Filed April 20, 1956. No. 33890.

*Kennedy, Holland, DeLacy & Svoboda* and *W. P. Mueller*, for appellant.

*Brown, Crossman, West, Barton & Quinlan* and *John R. Barton*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action at law by Leon A. M. Hickman, plaintiff and appellee, against Parks Construction Company, a corporation, defendant and appellant, to recover damages for personal injuries and medical expenses, occasioned by alleged negligence on the part of the defendant.

The case was tried to a jury. A verdict was returned in favor of the plaintiff and against the defendant for $18,500. Judgment was rendered on the verdict. The defendant filed an alternative motion for judgment notwithstanding the verdict or for a new trial. This motion was overruled. From the judgment and the order overruling the alternative motion the defendant has appealed. By the appeal a reversal of the judgment is sought.

The brief of appellant contains 14 assignments of error as grounds for reversal. Only six however have been argued. These alone will be given consideration herein.

The assignments of error in substance are: (1) That the court erred in overruling the motion of the defendant to direct a verdict in favor of the defendant or in the alternative to dismiss plaintiff's action with prejudice; (2) that the court erred in overruling the defendant's motion after verdict and judgment for a judgment notwithstanding the verdict in favor of the defendant; (3) that the court erred in overruling the defendant's motion for a new trial; (4) that the court erred, if the case required submission at all, in re-

fusing to submit the defense of assumption of risk; (5) that the court erred in refusing to give instruction No. 13 requested by the defendant; and (6) that the court erred in giving instruction No. 6 upon its own motion.

A determination of the questions presented requires an examination of the factual situation as disclosed by the record, the contentions of plaintiff by his pleadings, and the pleaded defense or defenses to these contentions of the plaintiff.

On June 1, 1952, prior thereto, and since, the United States has maintained an Air Force Base in Sarpy County, Nebraska, known as Offutt Air Force Base. On the base is a building or joined buildings. Hereinafter the arrangement will be referred to as one building or structure. The building has two separated wings which extend north and south. The separation is of about 69 feet. The two wings are joined at the north end by what is referred to as the north wing. The west wing extends southward about 70 feet. The east wing extends southward at least 120 feet and possibly farther. In the east wing, at all times of concern here an Air Force Officers Club was housed and maintained. In the west wall of the east wing and about 11 feet from where that wing is joined by the north wing of the building is a door from the outside area into the club. This was referred to as the door to the foyer of the club. About 33 feet farther south is another door referred to as the lounge door. About 37 feet south of this door is another referred to as the Bear Pit door. About 20 feet farther south is another door referred to as the kitchen door. About 20 feet farther south is still another door referred to as the service entrance. This west wall appears to be on a practically straight or even line from the north to the south for a distance of about 95 feet. Farther south it is uneven.

Immediately prior to May 27, 1952, the area bounded on three sides by the building and a line running west-

ward from a point not exactly determinable but somewhere in the vicinity of the Bear Pit door was not devoted to any particular use. Precisely to what use it had been put before has not been described. It appears however to have been sort of a patio. South of this line and some short distance west of the east wing are facilities for the disposal of garbage from the Officers Club and for the cleaning of large utensils. In this area are some trees. South of this is a parking lot to take care of automobiles of people coming to the club. The width of the parking area from east to west appears to be as much as the distance between the two wings of the building.

Some time prior to May 27, 1952, the Officers Club entered into a contract with the defendant to improve the area bounded generally on the west by the west wing, on the north by the north wing, on the east by that portion of the east wing starting at the north wing and extending to about 5 feet south of the Bear Pit door, and on the south from the point mentioned south of the Bear Pit door on a curved line to the northwest for a distance of about 20 feet, the direct distance between the ends of the curve being 17.8 feet, thence directly west about 45 feet. The contract was for the construction of a patio within the area and a wall on the line from the point south of the Bear Pit door across the south boundary of the area.

The construction of the wall required the digging or excavating of a ditch or trench the length of this south boundary line the purpose of which was to contain the footing and a base for the wall. Accordingly, starting on May 27, 1952, the necessary excavating was done. The excavation started at the wall south of the Bear Pit door and extended westward. The excavation was about 4 feet wide and about 4½ feet deep. In the excavation were placed forms for the pouring of a concrete base for the wall 8 inches thick with a footing of about 1 foot 8 inches. The concrete was poured and the forms re-

moved. The portion of the excavation to the north of the concrete base was backfilled so that the area north from the concrete was relatively even or level. The portion to the south was not backfilled completely if at all. This condition obtained on June 1, 1952.

On the night of June 1, 1952, which was Sunday, a party was held at the Officers Club. From about 5:30 p. m. on that date the plaintiff was in general supervisory charge of the operations of the club. This was a function which was divided by shifts among three officers, the other two being senior to plaintiff. Among his functions was that of checking the cash receipts at the close of operations.

After checking the cash registers with the persons in charge of the registers, which was about 11:30 p. m., the plaintiff left through the Bear Pit door to go to his automobile which was parked in the parking lot. He stepped down to the ground a distance of from 12 to 16 inches and started to walk south or southwest. After two or three steps he stepped into the portion of the excavation south of the concrete base which had been placed in the excavation and was precipitated thereinto. In consequence of this he was seriously injured.

By his petition the plaintiff charges that his injuries were the result of negligence on the part of the defendant. The negligence charged is set forth in six separate specifications. The substance however of all of them is that the defendant was negligent in creating the condition described and, under the circumstances in the light of what it knew or in the exercise of ordinary care should have known, in leaving the excavation unguarded and without protection or protective signs.

To the petition the defendant filed a general denial. Further answering the defendant charged that the plaintiff sustained his injuries as the result of his own negligence. Also the defense of assumption of risk by the plaintiff was pleaded by the defendant.

The general charge of negligence against the plain-

tiff was that he failed to exercise the care required of him in the light of conditions of which he knew.

The three assignments of error first noted herein present first the question of whether or not the evidence was sufficient to sustain a finding that the defendant was guilty of actionable negligence. If this question is decided favorably to the defendant then no further question remains for decision. If however this question is decided favorably to plaintiff then the question of whether or not the evidence discloses as a matter of law that because of his own negligence the plaintiff is not entitled to recover must be decided.

The controlling principles are the following: "In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622.

"If a motion for directed verdict made at the close of the evidence in a case should have been sustained for want of evidence to support a verdict in favor of the party against whom made, it is the duty of the court on motion for judgment notwithstanding the verdict timely made to sustain such motion to set aside the verdict and to render judgment pursuant to the motion for directed verdict." Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

"In an action based on negligence to which the comparative negligence rule has application wherein the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight in comparison with that of the defendant the action should be dismissed or a verdict directed." Rogers v. Shepherd, 159 Neb. 292, 66 N. W. 2d 815.

The statement that if the evidence in a case discloses beyond reasonable dispute that a plaintiff's negligence

was the sole and proximate cause of his injury it is the duty of the court to direct a verdict against him or dismiss his action requires no citation for support.

As already indicated the basic contention of the plaintiff is that the defendant was, under the circumstances, under a duty to in some manner guard against the eventuality of persons properly in attendance at this Officers Club passing out through the doors on the west side of the east wing in the nighttime and unwittingly falling into the excavation.

The substance of the evidence in support of plaintiff's petition discloses the following: That on June 1, 1952, plaintiff came to the club, parked his car in the parking lot, and proceeded directly east to the service entrance where he entered to engage in the performance of his duties; that this was about 5:30 p. m.; that about 11:30 p. m. the Bear Pit door was opened and he passed out to go to his car; that the door was closed; that the night was dark and no part of the area outside was lighted; that there was no barricade or other instrument of warning in the vicinity of the east wing; that there was a barricade over at the southwest corner of the patio area; that plaintiff knew that some work was going on in the patio area but had never examined it and had no knowledge concerning it; that he had not observed and did not know of the excavation or the cement construction in it; that he had never used the Bear Pit door before for departure from the club; that there was an open and unobstructed area extending westward from the west side of the east wing except the obstruction caused by the excavation and the structure therein; that in the vicinity of the foyer door there was a sign warning against use of that door during construction but that there were no warning signs at any other door; that the main entrance to the club was a door at or near the northeast corner of the building; and that there was frequent crossing of

the patio area from the west side of the club to the parking lot.

The defendant contends that this evidence was insufficient as a basis for a verdict of the jury in favor of plaintiff. We think this contention should not be accepted. The general rule, which governs where a party is responsible for a dangerous place, agency, instrumentality, or operation likely to cause injury or damage to persons or property rightfully in its proximity, is that he is charged with the duty of taking due and suitable precautions to avoid injury or damage to such persons or property, and his failure to take such precautions constitutes negligence. 65 C. J. S., Negligence, § 84, p. 592; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So. 2d 224; Neal v. Twelfth & Grand Ave. Bldg. Co., 228 Mo. App. 536, 70 S. W. 2d 136; Havens v. Strayer, 326 Pa. 563, 193 A. 13; Cox v. Greenfield, 50 Ga. App. 699, 179 S. E. 178; Torok v. Stambaugh-Thompson Co., 36 Ohio L. Abs. 193, 43 N. E. 2d 653; Smith v. Henger, 148 Tex. 456, 226 S. W. 2d 425, 20 A. L. R. 2d 853; McKee v. Iowa Ry. & L. Co., 204 Iowa 44, 214 N. W. 564; Ruehl v. Lidgerwood Rural Tel. Co., 23 N. D. 6, 135 N. W. 793, L. R. A. 1918C 1063, Ann. Cas. 1914C 680.

This rule applied to excavations requires a contractor making an excavation on property of another to provide such protection as would guard persons rightfully on the property against any contingency that was reasonably to be anticipated. 65 C. J. S., Negligence, § 85, p. 593; Pate v. Parker, 180 Or. 330, 177 P. 2d 250; McKee v. Iowa Ry. & L. Co., *supra;* Ruehl v. Lidgerwood Rural Tel. Co., *supra.*

In the light of these rules the conclusion appears inescapable that the evidence was sufficient to sustain the finding of a jury that the defendant was guilty of negligence as charged against it.

This conclusion gains added force with a consideration and application of certain evidence of the defendant to the rule. Two witnesses for the defendant testified

in effect that persons from the club and in its vicinity frequently passed across the patio going to and from the parking area and that for that reason the barricade which has been mentioned was erected, which barricade was not effective as a preventive of crossing. A witness who was in charge of the work of the defendant testified substantially that he did not take any steps to protect the east portion of the excavation but that he left that matter to Major Morrow who was in general charge of the operation of the club. There was no evidence however that Major Morrow had or exercised any directory or supervisory control over the performance of the defendant under its contract or of anything in relation thereto.

The defendant could not be relieved from its responsibility to protect against the danger from the open excavation by reliance upon Major Morrow to protect against that danger. The person on whom the duty devolves is not excused from taking the necessary precautions by contracting with or relying on others to take necessary precautionary measures. See, 65 C. J. S., Negligence, § 84, p. 592; Ainsworth v. Lakin, 180 Mass. 397, 62 N. E. 746, 57 L. R. A. 132, 91 Am. S. R. 314; Lauer v. Palms, 129 Mich. 671, 89 N. W. 694, 58 L. R. A. 67.

It is a well-established rule that if there is any evidence which will sustain a finding for the litigant having the burden of proof in a cause the trial court may not disregard it and decide the case as a matter of law. See, Herman v. Firestine, 146 Neb. 730, 21 N. W. 2d 444; Krepcik v. Interstate Transit Lines, 152 Neb. 39, 40 N. W. 2d 252; Fick v. Herman, *supra.*

Under the legal principles stated and the evidence which has been briefly summarized it becomes apparent, as has been stated, that there was sufficient evidence upon which to submit the question of negligence of the defendant to a jury.

The trial court therefore did not err in its refusal to sustain the defendant's motion for judgment notwith-

standing the verdict or for a new trial to the extent that it was based on the contention that plaintiff's evidence was insufficient to sustain the charge that defendant was guilty of negligence.

The substance of the further contention of the first three noted assignments of error is that the court erred in refusing to hold that the plaintiff was guilty of such negligence himself as would as a matter of law defeat any right of recovery from the defendant.

In the light of the conclusion reached that there was evidence sufficient upon which to submit to the jury the question of whether or not the defendant was guilty of negligence causing the injury to the plaintiff, the question of whether or not the plaintiff was guilty of negligence which, *as a matter of law,* was the *sole and proximate cause* of his own injuries is eliminated from consideration.

It becomes necessary however to ascertain whether or not under the application of the comparative negligence rule the plaintiff is precluded from the benefit of the verdict in his favor.

The following are elements of application of the comparative negligence rule: If it appears that a defendant has been guilty of gross negligence and a plaintiff has been guilty of slight negligence by comparison with that of the defendant the plaintiff may recover. If a defendant has been guilty of gross negligence and a plaintiff has been guilty of negligence more than slight by comparison with that of the defendant the plaintiff may not recover. If a defendant has been guilty of negligence but which is less than gross and the plaintiff has been guilty of negligence in any degree the plaintiff may not recover. See, Dodds v. Omaha & C. B. St. Ry. Co., 104 Neb. 692, 178 N. W. 258; Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462; Krepcik v. Interstate Transit lines, *supra;* Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207; Rogers v. Shepherd, *supra.*

Ordinarily the question of the existence of negligence

or contributory negligence is for a jury. The question is one for a jury where different minds may reasonably draw different conclusions from the evidence as to the existence of negligence or contributory negligence. Likewise ordinarily the comparison of negligence and contributory negligence is a question for the jury. Krepcik v. Interstate Transit Lines, *supra.*

If however on a comparison the evidence shows beyond reasonable dispute that a plaintiff's negligence was more than slight it is the duty of the court to determine the question as a matter of law and to direct a verdict in favor of the defendant. Krepcik v. Interstate Transit Lines, *supra;* Rogers v. Shepherd, *supra.*

It is this comparative phase of the defendant's assignments of error that is now being considered. The determination of it must turn upon the question of whether or not it may be said as a matter of law that the plaintiff was guilty of more than slight negligence in passing out of the Bear Pit door and walking into the excavation.

On the plaintiff's side it may be said that a jury could reasonably find that in the absence of the excavation no danger would be involved in a departure such as was attempted by the plaintiff. The evidence of plaintiff is to the effect that he knew that work was going on in the patio area; that he did not know of its kind or character; that he had never been out there; that he had no knowledge of the excavation; that nothing connected with his duties required of him that he become informed of the condition; that it was customary for people to cross the patio area in going to and from the parking area; that there was no warning as to danger of the use of the area except a sign at the foyer door which directed that the door should not be used during construction; that he had never used the Bear Pit door to go to and from the club before; that when he went out and the door was closed he was in complete darkness; that he employed no means to light his way; and that

nothing occurred prior to the time he fell into the excavation to indicate that he was confronted with danger.

The pertinent evidence of the defendant is to the effect that plaintiff at some time was seen in the patio area; that there were warning signs at all doors; that the defendant knew that people crossed the patio area going to and from the parking lot; that in an effort to prevent this it erected barriers to the west but not in the area immediately adjacent to the east wing; that the matter had been discussed with Major Morrow and the defendant relied upon him to take steps to protect against danger; and that the plaintiff had matches in his pocket but did not use them to light his way on his movement from the door in the direction of the parking lot.

Under the facts as summarized and the rules of law set forth it appears that the question of whether or not the plaintiff was guilty of contributory negligence, and if so, the degree thereof, was one to be determined by the jury.

The determination upon the three assignments of error first noted herein must be resolved in favor of the plaintiff and against the defendant.

By the next noted assignment of error the defendant contends that the plaintiff assumed the risk of the condition into which he moved and in consequence he may not be allowed to recover. The trial court refused to submit this defense as an issue to the jury. The defendant insists that this was error. With this contention we do not agree.

Where the master and servant relation does not exist, the rule is that one who voluntarily assumes the risk of injury from a known danger is barred from a recovery in a negligence case. This rule is reviewed at length in Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

In this instance the evidence discloses that the plaintiff had no previous knowledge of the danger—the excavation.

The determination upon this assignment of error effectually disposes of the next one. By this assignment the defendant urges that the court should have instructed the jury in substance that in view of the fact that the plaintiff walked upon ground with which he was unfamiliar and that since he did not use artificial means to light his way he assumed the danger of so walking without lights.

The apparent effort was to have applied to these facts the doctrine of assumed risk. The doctrine may not be so extended. It applies to *known dangers* and not to those things from which, in possibility, danger may flow.

It is of course true that what plaintiff did or failed to do in these respects was a matter properly for the consideration of the jury in determining whether or not the plaintiff was guilty of contributory negligence.

The next and last assignment of error argued relates to a part of instruction No. 6 given by the court. The part of the instruction of concern is the following:

"If you find from a preponderance of the evidence that the defendant could reasonably have anticipated that some travel might be expected over the area in the nighttime, and that the place was not properly lighted so that the trenches could have been discovered by one exercising ordinary care and not properly barricaded against anyone who might reasonably be expected to proceed over such area, then you are warranted in finding the defendant negligent on such occasion. In this connection, the defendant as a matter of law was not entitled to rely upon the promise of anyone to keep the side doors locked, if you find such promise was made, but was required to exercise ordinary care in seeing that the place was properly lighted and barricaded so that dangers in proceeding across such area could reasonably have been discovered by one exercising ordinary care or such person prevented from proceeding over such area."

The particular objection is that it was error to tell

the jury that "the defendant as a matter of law was not entitled to rely upon the promise of anyone to keep the side doors locked, if you find such promise was made, but was required to exercise ordinary care in seeing that the place was properly lighted and barricaded so that dangers in proceeding across such area could reasonably have been discovered by one exercising ordinary care * * *."

The giving of this instruction was not error. As already pointed out herein the responsibility of the defendant to protect against danger from the open excavation could not be relieved by reliance upon someone else to protect against the danger.

Finding no reversible error the judgment of the district court is affirmed.

AFFIRMED.