Thomas Wayne SMITH, Respondent,

v.

The INTER–COUNTY TELEPHONE COMPANY and Telecom Engineers, Inc., Appellants.

No. 59880.

Supreme Court of Missouri, En Banc.

Dec. 19, 1977.

Joseph K. Houts, St. Joseph, for appellants.

Jerold L. Drake, Grant City, for respondent.

FINCH, Judge.

Plaintiff, an employee of M. Summers Company, a general contractor which had a contract to perform a job which included laying underground telephone cables for The Inter-County Telephone Company, was injured when the walls of a trench in which he was working caved in on him. Plaintiff sued Inter-County and Telecom Engineers, Inc., an engineering firm which designed the project and which had a contract with Inter-County to inspect the job and make

sure that it was built in accordance with the plans and specifications.

Plaintiff's petition alleged, among other things, that although Inter-County had contracted with Summers to do the work, including digging trenches and laying telephone cables, it retained the right to control the excavation and work; that it knew that the work which Summers was to do involved a high risk of injury to employees of Summers unless special precautions were taken; that Inter-County owed to the employees of Summers a non-delegable duty to take a special precaution to see that such injury did not occur; that steps such as shoring or bracing or sloping the sides of the trenches to avoid dangers of cave-in were not taken; and that as a result of such negligence plaintiff was injured.

In response Inter-County answered that it was not liable to plaintiff because it had contracted with Summers, an independent contractor, to do the work; that it did not retain control; that the work was not inherently dangerous; that Summers and plaintiff had accepted and were operating under the Workmen's Compensation Act; that plaintiff was a statutory employee under the act; and that his only remedy was under that act. The answer also pleaded contributory negligence.

The case was submitted to the jury on the basis of verdict directing instructions (set forth in full *infra*) which called for recovery if defendants had the right to control the trenching and excavating and negligently failed to shore up or brace the trench adequately, resulting in injury to plaintiff. Contributory negligence instructions also were given. Plaintiff obtained a verdict and judgment for $15,000 against both defendants. They appealed to the Missouri Court of Appeals, Kansas City District, which reversed. On application of plaintiff, the case was transferred here and we now decide it as though here on direct appeal. We reverse and remand as to Inter-County and reverse as to Telecom.

Inter-County contracted with Telecom to design and plan a project for rehabilitating and improving 190 miles of existing telephone lines and facilities and adding some new lines. Permission to lay underground cables along and under public roads of the county was obtained from Worth County. Inter-County then contracted with Summers to construct the system. Telecom, under its contract with Inter-County, was to perform the job of inspecting materials and workmanship on the job.

The main telephone cable which was installed along the road right-of-way was buried automatically at a depth of 30 inches by use of a vibrating plow. Customer connections which ran from the main cable were buried at a depth of 24 inches in trenches dug by hand or with a backhoe. When it was necessary for the line to cross an existing highway, a two inch pipe was driven under the highway. To accomplish this a trench perpendicular to the highway was excavated on one side of the highway and a trench parallel to the highway was dug on the other side. After the trenches were dug to the required depth, the backhoe was used to push the pipe under the highway from the perpendicular ditch to the parallel ditch and the cable then was threaded through the pipe.

Plaintiff was employed by Summers in April 1971 and was assigned to digging the lateral ditches for customer connections. On May 14, 1971, plaintiff reported for work at contractor's building. It had rained and, except for some employees who wanted to work, most of the employees had been laid off. A crew was dispatched to push a pipe for the main cable under a highway and plaintiff was assigned to it.

When the crew arrived at the site where the highway crossing was to be installed, the backhoe operator first dug perpendicular and parallel ditches adjacent to the highway. The perpendicular ditch, which was on the east side of the highway, was approximately 20 feet in length. The depth of the ditch ranged from about 4 feet at the highway to about 12 feet at its east end because the land sloped upward from the highway. It was somewhat wider than the width of the backhoe bucket with which it was dug. The walls were vertical and were not braced or shored in any manner.

When the ditch had been completed, plaintiff and Ernie Gardner, another employee, entered the ditch and aligned the pipe to be driven under the highway. It was then pushed under the highway with an applicator for pushing pipe which was attached to the backhoe. When the first section had been pushed under the highway the two men then knelt in the ditch to screw a second section onto the first. It then was pushed under the highway after which the men knelt to attach a third section of pipe. Gardner was at the shallow end of the ditch. Plaintiff was toward the deeper end, testimony placing the depth at that point at somewhere between 6 and 12 feet.

While they were attaching the third section of pipe, plaintiff heard someone "holler." He stood up and looked around and saw the north wall of the trench collapsing. He put his hands up against it and remembered dirt going over his head. Others in the crew said that he just disappeared from view but that when the dirt had settled around him, he was buried to his chest and shoulders. His fellow employees then jumped in and dug him out.

Other portions of the evidence will be recited in connection with our discussion of the various issues raised.

Inter-County's first assignment on appeal is that the trial court erred in failing to direct a verdict in its favor. Its motion for a directed verdict alleged that the construction of this project was being performed by Summers, an independent contractor; that plaintiff was Summers' employee; that the work being performed was not in and of itself dangerous but became dangerous only by reason of negligence of the independent contractor and its employees in doing the work; that Inter-County owed no duty to plaintiff; and that it had not been negligent.

■ Plaintiff offered no evidence that either Inter-County or Telecom exercised physical control over Summers' employees. The testimony of defendants' witnesses was to the effect that they did not exercise such control and did not direct how the job was to be performed, their work being limited to activity designed to make certain that construction was according to the plans and specifications. Plaintiff did offer in evidence the contracts between Summers and Inter-County and between Inter-County and Telecom. Because the project was being financed by REA, these contracts were on standard REA forms. Provisions therein gave Inter-County, on its own or through Telecom, the right to inspect and to take steps necessary to secure proper performance, including quality of materials and workmanship, but such provisions did not destroy the intended relationship of owner and independent contractor. *Williamson v. Southwestern Bell Tel. Co.,* 265 S.W.2d 354 (Mo.1954); *Boulch v. John B. Gutmann Const. Co.,* 366 S.W.2d 21 (Mo.App.1963).

■ It is true, as Inter-County contends, that as a general rule one contracting with an independent contractor to do work is not normally liable for bodily harm caused to another by a tortious act or omission of the independent contractor or his servants. However, there is a well established exception to that rule where the work subcontracted involves a special or inherent danger to others. This exception was described in *Stubblefield v. Federal Reserve Board of St. Louis,* 356 Mo. 1018, 204 S.W.2d 718, 722 (1947), as follows:

"One of the well recognized exceptions to the rule contended for by these two defendant-appellants is that, 'One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions.' 2 Restatement, Torts, Secs. 413, 416. If the circumstances fall within this rule a primary, non-delegable duty is imposed upon the employer—or here upon the owner and general contractor and they may not escape that duty or responsibility upon the plea of independent contractor. Annotations 23 A.L.R. 984; 115 A.L.R., l.c. 977."

*Stubblefield* involved injury to one walking by a bank building under construction who was hit by a wooden wedge which fell from near the top of the building. The building owner and the general contractor contended that they were not liable because of negligence of a subcontractor, an independent contractor, or his employees. They also contended that the work was not inherently dangerous and that consequently they had no obligation to erect barricades or warn pedestrians. This court held the subcontractor relationship does not insulate the owner or contractor from liability when the injury results from danger inherent in the work subcontracted. Consequently, it affirmed the action of the trial court in setting aside a verdict for defendants and granting plaintiff a new trial against the building owner and the general contractor. Other cases which also recognize this exception include *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (banc 1928); *Barkley v. Mitchell*, 411 S.W.2d 817 (Mo.App.1967); *Neal v. 12th & Grand Ave. Bldg. Co.*, 228 Mo.App. 536, 70 S.W.2d 136 (1934); *Privitt v. Jewett*, 225 S.W. 127 (Mo.App.1920); *Carson v. Blodgett Const. Co.*, 189 Mo.App. 120, 174 S.W. 447 (1915). *See also* Restatement (Second) of Torts §§ 416, 427 (1977).

The case of *Carson v. Blodgett Const. Co.*, *supra*, contains a more explicit statement as to just when work is inherently dangerous so as to impose liability on the owner or contractor, despite the independent contractor arrangement. It states, 174 S.W. at 448:

> "The authorities generally hold that when the work to be done is inherently or intrinsically dangerous, and the danger arises from the doing of the work and requires preventive care to bring about safety, then the employer is liable notwithstanding the persons employed are independent contractors. The distinction seems to be that if the doing of the work necessarily causes dangers which must be

guarded against, then the employer must see to it that such dangers are guarded against, and cannot relieve himself by casting this duty on an independent contractor. If, however, the work is dangerous only by reason of negligence in doing it, then the liability falls only on the independent contractor. In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by negligence. The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger. * * * "

Most of the above cited cases involved situations where those permitted to recover on the basis of the inherent danger exception were members of the public who were injured. However, that was not true in *Mallory v. Louisiana Pure Ice & Supply Co.*, *supra*. In that case the ice company contracted for the erection of a building adjacent to their existing plant. A subcontractor had the job of excavating for the foundation which went two feet deeper than the foundation of the old building. In addition, it was to extend six inches under the old foundation. While an employee of the subcontractor was working in the excavation, the old wall collapsed and plaintiff was injured. There had been no shoring and no support provided for the old wall. Plaintiff sued the ice company, the owner, and the general contractor, alleging negligence in undermining the old wall, allegedly dangerous work, without taking any steps to secure the stability and preservation of the old wall. Defendants contended that they were not liable because the work was being done by a subcontractor and was not inherently dangerous, the danger arising only because of negligence by the subcontractor in the manner in which he performed the job.

This court rejected that argument, 320 Mo. 113–14,[1] 6 S.W.2d 625:

---

1. The official reporter will be cited for this and all subsequent quotations from *Mallory* because of discrepancies in punctuation and wording between the then unofficial South-

western Reporter and the Missouri Reports. The misstated passages appear at 6 S.W.2d 624–26.

"Must it not be said that danger started with excavation under this wall? * * The work required to be done in the instant case, the excavation to be made underneath the wall of the height and character here shown cannot be deemed an ordinary building operation. Our conclusion is that it was an operation 'attended with danger to others,' or, intrinsically dangerous, in that, its performance would likely result in damage, unless proper precautionary measures were taken."

The court subsequently concluded, 320 Mo. at 115, 6 S.W.2d at 625:

"In this case, the work at which plaintiff was engaged when injured was work at excavation and removal of the earth from underneath the wall, the very work which the contract required to be done, and work which itself created a dangerous condition, making it likely the wall would fall, unless precautionary measures were taken. * * * "

The defendants in *Mallory* also contended that the inherent danger exception was not available to plaintiff as an employee of the subcontractor. After referring to an A.L.R. annotation and some cases which had considered this question, the court held, 320 Mo. 117, 6 S.W.2d 626:

"There is no contractual relation between the owner and the servant of the independent contractor; and, under that view, such servant so far as the principal employer, is entitled to his remedial rights on the same footing as others. * * * "

Thus, our cases have clearly recognized a cause of action against one who contracts for work to be done by an independent contractor for breach of the employer's non-delegable duty imposed by law where performance of the contract necessarily involves inherently dangerous activity. This cause of action is an exception to the general rule also recognized in our cases that the employer is not ordinarily liable for the acts or omissions of an independent contractor. To make a submissible case under this exception, our cases have established that the plaintiff must present evidence that: (1) performance of the contract necessarily involves some inherently dangerous activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence. Inherently dangerous activity is that which necessarily presents a substantial risk of damage unless adequate precautions are taken.

As previously noted, plaintiff alleged in his petition that the work to be done by Summers under the contract with Inter-County was of a type which was likely to create a substantial risk of harm to Summers' employees unless special precautions were taken. In support thereof, he offered evidence that the contract called for insertion of the pipe under the road at a substantial depth; that the walls of the trench in which plaintiff was injured were vertical, not sloped; that the ditch at that point was between 6 and 12 feet deep; and that there was no shoring or bracing of any kind. He offered in evidence the chapter on "Excavation and Shoring" from the "Manual of Accident Prevention in Construction" of the Associated General Contractors of America, which manual was incorporated by reference in the contract between Inter-County and Summers. Section 24–7 of Chapter 24 of that manual states in part as follows: "Trenching operations are common to many types of construction and maintenance projects and are inherently dangerous. Due to the great exposure, numerous accidents in connection with trenching occur every year." It then states that a few precautions will eliminate most of the risk, after which such precautions are listed. The first one states: "1. Shoring and/or bracing should be placed in every trench over four feet in depth, regardless of soil type, except solid rock, unless banks are

sloped to the angle of repose recommended under paragraph 24-4."

Plaintiff also offered expert testimony to the effect that a trench 6 to 12 feet deep which has vertical dirt walls with no shoring or bracing is by its very nature dangerous to persons working in that trench. In explaining his testimony to that effect, the witness said: "Soil isn't meant to be stood up straight, and in nature it usually doesn't occur that way, at least not for long. So if there is no shoring or any kind of bracing material against the side of the trench, if it were very deep, this would be a dangerous situation. This material here, the manual of Accident Prevention, indicates a safe depth would be four feet. Anything deeper than this would have danger of caving in."

■ Inter-County's motion for directed verdict alleged that the work being performed by Summers under the contract was not in and of itself dangerous but became dangerous only by reason of negligence of Summers and his employees in doing the work. However, the evidence outlined above was clearly sufficient to present a factual question as to each element of the inherent danger theory as summarized above. Consequently, it was not error for the trial court to overrule Inter-County's motion for directed verdict.

As an additional basis for contending that a verdict should have been directed in its favor, Inter-County argues in its brief that "If plaintiff was a servant, his recovery is barred by Workmen's Compensation." In support thereof, it cites *Montgomery v. Mine La Motte Corp.,* 304 S.W.2d 885 (Mo. 1957). This point is not very clearly articulated in Inter-County's brief. Apparently from its answer and what the brief does say, it is contending that under § 287.040, RSMo 1969, plaintiff was a statutory employee of Inter-County and is limited to recovery under the terms of the Workmen's Compensation Act. The *Mine La Motte* case so held with reference to a truck driver for an independent contractor who drove his truck into defendant's mine and while loading his truck in the mine was injured.

■ Inter-County is not entitled on this appeal to relief on the basis of the foregoing assignment. Although the issue was raised in its answer, no evidence was introduced to support this affirmative defense. When Inter-County filed its motion for a directed verdict, it did not raise or rely on this issue. Likewise, in its motion for new trial, there is no reference to the Workmen's Compensation Act or whether plaintiff was under it or whether he was a statutory employee of Inter-County. Consequently, the issue was not preserved and is not now before us for review.

Inter-County's next assignment on appeal is that the court erred in giving Instruction No. 3 which was as follows:

"INSTRUCTION No. 3

"Your verdict must be for plaintiff and against defendant The Inter-County Telephone Co., if you believe

"First, defendant The Inter-County Telephone Co. had the right to control the trenching and excavating, and

"Second, defendant The Inter-County Telephone Co., either:
Failed to shore up, or
Failed to brace the trench adequately, and

"Third, defendant The Inter-County Telephone Co.'s conduct in any one or more of the respects submitted in paragraph Second, was negligent, and

"Fourth, such negligence either directly caused damage to plaintiff, or combined with the acts of Telecom Engineers, Inc., to directly cause damage to plaintiff,

"unless you believe plaintiff is not entitled to recover by reason of Instruction Number 7."

■ As previously noted, plaintiff offered no testimony that Inter-County exercised control over Summers' employees or over the trenching or other work done under the contract. He relied solely on the

provisions in the contract between Inter-County and Summers to support his contention that Inter-County had the right to control the trenching and excavating done on the job. Interpretation of the provisions of that contract is a matter of law for the court to decide, not a factual issue for resolution by the jury. We conclude and hold that the contract gave Inter-County the right to inspect, or have its representatives, inspect the job in order to secure proper performance of the contract in accordance with the plans and specifications, but it did not place overall supervision and control of the job in Inter-County. Hence, the submission to the jury in Instruction No. 3 of the issue of whether Inter-County had the right to control the trenching and excavating was not supported by the evidence. Plaintiff, in attempting to support Instruction No. 3, cites *Koirtyohann v. Washington Plumbing & Heating Co.*, 471 S.W.2d 217 (Mo.1971), in which an issue as to control over an employee was held to be properly submitted to a jury. However, that case involved the "borrowed servant" doctrine and whether the general contractor had surrendered complete or only partial control over the servant involved. It has no relevance to the issue now before us.

■ It is also immediately apparent that Instruction No. 3 does not properly submit the elements of the inherent danger theory. Thus, there is no basis for upholding the jury's verdict and the judgment must be reversed. However, since we have concluded that plaintiff did make a submissible case under that theory, the question arises as to whether this case should be remanded for a new trial. In *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d 396, 398 (Mo. banc 1969), we considered a similar question and stated:

"In this posture, what disposition should be made of the case? It is apparent that plaintiff proceeded upon an erroneous theory of liability on the part of defendant. However, under the circumstances, we cannot conclude that this was 'done for strategic advantage.' See *Smith v. St. Louis Public Service Co.*, 364 Mo. 104, 111, 259 S.W.2d 692, 696. The rule stated in *Smith v. Terminal R. R. Ass'n of St. Louis,* Mo.App., 160 S.W.2d 476, 479, applies: 'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.' Cf. *Cudney v. Midcontinent Airlines,* 363 Mo. 922, 254 S.W.2d 662, and *Pigg v. Bridges,* Mo.Sup., 352 S.W.2d 28.

"The record shows a state of facts which justifies a remand to permit plaintiff to seek recovery under some other theory of liability, if so advised. For example, see 1 Restatement, Law of Torts, Second, § 46; *Pretsky v. Southwestern Bell Telephone Company,* Mo. Sup., 396 S.W.2d 566."

We find the reasoning of *Zimmerman* persuasive here. We therefore conclude that the furtherance of justice requires that this case be reversed and remanded as to Inter-County to afford plaintiff an opportunity to seek recovery under the inherent danger theory.[2]

2. Inter-County asserts on appeal that plaintiff's theory should have been submitted by modifying MAI 24.01: "Verdict-Directing—F.E.L.A.— Failure to Provide Safe Place to Work." As should be apparent from our discussion and holding herein, this instruction clearly does not embody the theory of recovery under the inherent danger exception. Because there is no MAI instruction which does embody this theory, an instruction consistent with this opinion which follows the directions of Rule 70.01 will be required. This should be accompanied by an appropriate instruction defining "inherently dangerous" consistent with this opinion.

Defendant Telecom urges on appeal that the trial court erred in failing to sustain its motion for a directed verdict. It asserts that the evidence established that it had no contract with Summers, plaintiff's employer, had no relationship to or control over Summers' employees and had no duty to them. None of Telecom's representatives were at the job site when plaintiff was hurt.

■ In response, plaintiff urges that Telecom had the right to control the trenching operation. We disagree. The evidence does not show that Telecom exercised control or had a right to control. Plaintiff makes no assertion that Telecom contracted for inherently dangerous activity and the evidence adduced did not support such a theory against Telecom. We therefore conclude that the trial court should have directed a verdict in favor of Telecom.

The judgment against Telecom Engineers, Inc. is reversed. The judgment against The Inter-County Telephone Company is reversed and the cause is remanded for a new trial.

BARDGETT, HENLEY, DONNELLY, RENDLEN and SEILER, JJ., and McMILLIAN, Special Judge, concur.

MORGAN, C. J., not sitting.